1998 ME 47

David PAFFHAUSEN

v.

John J. BALANO & Joel J. Balano–Stott,
Personal Representatives of the Estate
of Elizabeth K. Balano.

Supreme Judicial Court of Maine.

Argued Oct. 6, 1997.

Decided March 6, 1998.

Joseph Steinberger (orally), Rockland, for appellant.

Stephen W. Hanscom (orally), Crandall, Hanscom, Pease and Collins, P.A., Rockland, for appellees.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

[¶ 1] David Paffhausen appeals from an order entered in the Knox County Probate Court (*Emery, J.*) rejecting his *quantum meruit* claim against the estate of Elizabeth Balano but allowing recovery for unjust enrichment. Because we conclude that David was entitled to recover pursuant to the theory of *quantum meruit*, we vacate the judgment.

[¶ 2] In March 1990, David, who is a carpenter and an artist, asked Elizabeth Balano for permission to renovate a building owned by her. David had hoped to convert the building into a fine art print shop. The evidence shows that Elizabeth approved David's request, with the understanding that he would pay her $60.00 per month after he "got the business up and running." Over the course of David's extensive renovations,[1] Elizabeth at various times signed notes to various town authorities approving his work and allowing him to procure permits. She also gave him a signed note on December 11, 1991 stating: "To Whom it may Concern— David can use my house as long as he needs it."[2]

[¶ 3] The building was revamped sufficiently to allow David to host two art shows in 1994 and 1995. After Elizabeth's death in October of 1995, her personal representatives offered David one year of free rent, after which his rent would be $60 per month, but for no definite term. David rejected the offer, presumably because beyond one year he would be a tenant at will, subject to eviction. Throughout the period of David's renovation of the property, Elizabeth or her estate paid all real estate taxes and insurance premiums, and David has paid no rent.

[¶ 4] In 1996 David filed a claim against Elizabeth's estate. The estate disallowed the claim. Pursuant to 18-A M.R.S.A. § 3–806, David filed a petition to resolve a disputed claim in the Probate Court. After a hearing, the court rejected David's theory of *quantum meruit*, but did allow David to recover $12,300 as unjust enrichment based on what the court found to be the value of the improvements to the building.

[¶ 5] David contends the court erred in concluding that he failed to prove the elements of *quantum meruit*. David argues that he and Elizabeth had an understanding that for the renovations he made to the building he reasonably expected to receive, and Elizabeth promised to give, "the use of the building at no or nominal rent" for as long as he needed it, and that this understanding entitles him to recover from the estate in *quantum meruit*. On appeal, we defer to the trial court on its findings of fact, but review de novo the application of the law

---

1. The Probate Court found:

   Petitioner did improve the property; he cleaned it up and hauled many loads of trash to the dump; he shored up the building; he built up forms, he rebuilt the foundation; he removed contaminated soil from around the building; he had the chimney rebuilt; he installed a wastewater system. . . .

   These findings were well-supported by the record.

2. David testified that in April of 1993, he again approached Elizabeth for more formal assurances as to his investment in the building to which she replied: "Don't worry, the building is yours." Her close friend, Jane Scarpino, testified that Elizabeth had said to her that "this young man was going to . . . take the place" and renovate it.

to those facts. *Estate of Plummer*, 666 A.2d 116, 118 (Me.1995).

[¶ 6] We have recently explained the difference between *quantum meruit* and unjust enrichment. *Quantum meruit*, also sometimes labelled "contract implied in fact," involves recovery for services or materials provided under an implied contract. *See Aladdin Elec. Assoc. v. Old Orchard Beach*, 645 A.2d 1142, 1145 (Me.1994). *See also United States ex rel. Modern Elec., Inc. v. Ideal Elec. Sec. Co.*, 81 F.3d 240, 246 (D.C.Cir.1996) ("[Q]uantum meruit ... rests on a contract implied in fact, that is, a contract inferred from the conduct of the parties."). Unjust enrichment describes recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay, and the "damages analysis is based on principles of equity, not contract." *Aladdin Elec. Assoc.*, 645 A.2d at 1145.[3]

[¶ 7] Damages in unjust enrichment are measured by the value of what was inequitably retained. *Id.* In *quantum meruit*, by contrast, the damages are not measured by the benefit realized and retained by the defendant, but rather are based on the value of the services provided by the plaintiff. *See Siciliani v. Connolly*, 651 A.2d 386, 387 (Me.1994) (plaintiff's labor rather than enhanced value of property is the proper measure in *quantum meruit* claim); *William Mushero, Inc. v. Hull*, 667 A.2d 853, 855 (Me.1995) (*quantum meruit* damages are equal to the reasonable value of the services rendered).

[¶ 8] A valid claim in *quantum meruit* requires: "that (1) services were rendered to the defendant by the plaintiff; (2) with the knowledge and consent of the defendant; and (3) under circumstances that make it reasonable for the plaintiff to expect payment." *Bowden v. Grindle*, 651 A.2d 347, 351 (Me.1994).

---

3. We have made an effort to overcome considerable confusion between unjust enrichment and *quantum meruit*. *See A.F.A.B., Inc. v. Old Orchard Beach*, 639 A.2d 103, 105 n. 3 (Me.1994) ("terms are often used synonymously [but] the distinction between them is legally significant"); *Danforth v. Ruotolo*, 650 A.2d 1334 n. 2 (Me. 1994) (noting cases that confused the distinction). *See also* 66 Am.Jur.2d *Restitution and Implied Contracts* § 166 (1973) ("Quantum meruit is an ambiguous term. It may mean that there is a contract implied in fact to pay the reasonable value [of the goods or services furnished], or that to prevent unjust enrichment the claimant may recover on a quasi-contract for that reasonable value.").

Further confusion has resulted from our use of the term "quasi-contract" both to describe unjust enrichment, *Estate of White*, 521 A.2d 1180 (Me. 1987) and to describe *quantum meruit*. *See Bowden v. Grindle*, 651 A.2d 347, 350 n. 2 (A claim of *quantum meruit* is more appropriately described as a claim of quasi-contract.... The expression *"quantum meruit"* means "as much as deserved" and describes the extent of liability on a contract *implied by law* or "quasi contract.") (emphasis added). *Cf. Johnson Group, Inc. v. Grasso Bros., Inc.*, 939 S.W.2d 28, 30 (Mo.Ct. App.1997) ("[I]n Missouri there exist[ ] two separate remedies for a recovery based upon quasi-contract: unjust enrichment and quantum meruit.").

The association of quasi-contract and *quantum meruit*, as in *Bowden*, is not helpful, because it suggests that the *quantum meruit* recovery is not based upon contract principles, as we have said

that it must be. *See Danforth*, 650 A.2d at 1335 (requiring proof that services were rendered in circumstances consistent with contract relations). *Cf. Restatement (Second) of Contracts* § 4 com. b (1981) ("[U]nlike true contracts, quasi-contracts are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice.").

The Restatement definition of quasi-contract is historically accurate, because it reflects the common law's gradual acceptance of the essentially contractual writ of assumpsit even for debts arising out of non-contractual transactions where no express or tacit promise existed. *See* 1 *Corbin on Contracts* § 1.18(a) (rev. ed. 1993) ("The legal duties that were enforced by use of this fictitious promise have come to be described as quasi-contractual. In other words, a promise 'implied in law' is a *constructive* promise, a term that denotes a set of facts that will be treated *as if* a promise is made."). The probable historical cause for associating *quantum meruit* with quasi-contract is that at common law *quantum meruit* recoveries for the reasonable value of services provided were deemed, "in the tortured logic of yesteryear," to rest on a contract implied in law even when an express or implied contract existed. *Id.* at § 1.18(b).

Given the relative clarity that we have achieved in our distinction between *quantum meruit* and unjust enrichment, *see Aladdin*, 645 A.2d at 1145, and the ambiguity inherent in the term "quasi-contract," the latter term may have limited usefulness in our analytical framework.

[¶ 9] While the formalities of an express contract are not a prerequisite to recovery in *quantum meruit*, there must be a reasonable expectation on the part of the claimant to receive compensation for his services and a "concurrent intention" of the other party to compensate him. *Estate of White*, 521 A.2d 1180, 1183 (Me.1987). Similarly, we have said that an implied promise is made to a person "when the surrounding circumstances make it reasonable for him to believe that he will receive payment . . . from the other." *Bourisk v. Amalfitano*, 379 A.2d 149, 151 (Me.1977). *Danforth v. Ruotolo*, 650 A.2d 1334 (Me.1994), described this test of reasonableness as requiring "proof that services were rendered under circumstances consistent with contract relations." *Id.* at 1335. It must appear that the one who rendered the services expected compensation and that the one who received or benefitted from the services so understood, and by her words or conduct justified the expectation. *Colvin v. Barrett*, 151 Me. 344, 348, 118 A.2d 775 (1955). *Quantum meruit* may lie when "there was not a clear accession on both sides to one and the same terms," if services are provided "under circumstances that negative the idea that the services were gratuitous." *Id.* at 349, 118 A.2d 775 (citations omitted). When such a party to whom services are rendered "knows it and permits it and accepts the benefit, he is bound to pay a reasonable compensation therefor." *Id. See also Ideal Elec. Sec. Co.*, 81 F.3d at 246 (requiring "circumstances which reasonably notified the person that the plaintiff, in performing such services, expected to be paid"); *Montes v. Naismith and Trevino Constr.*

*Co.*, 459 S.W.2d 691, 694 (Tex.Civ.App.1970) ("... under such circumstances as reasonably notified the person sought to be charged that the plaintiff, in performing such services was expecting to be paid by the person sought to be charged").

[¶ 10] Although the decision of the Probate Court reflects thoughtful attention to the details of the case, the court nevertheless erred in its application of the law of *quantum meruit* to its factual findings and in its conclusion that the evidence does not support a recovery in *quantum meruit*.[4] The court did find that extensive services were rendered by David to renovate the building, and that Elizabeth "approved of his desire to transform her building into a print shop/art gallery." The court, however, erroneously concluded that David failed to show a reasonable expectation of payment. The court determined that there was no "contemporaneous understanding between the parties," and concluded there was no evidence that Elizabeth intended to reimburse David for his expenses. The court would not allow David recovery in *quantum meruit* unless he proved *Elizabeth's intention* to compensate him fully for all of his labor and expenses to convert the building either through cash reimbursement or use of the building for as long as he wished for a nominal rent. All that the law of *quantum meruit* requires David to prove, however, is that he had a reasonable expectation that his work was not gratuitous and that Elizabeth *by her words or conduct* justified this expectation.[5] *Colvin v. Barrett*, 151 Me. at 348, 118 A.2d 775.

4. The court also erred in its factual finding that "the *only evidence* presented that [Elizabeth] intended to let [David] use the building as long as he wanted was his own testimony based on his recollection of one conversation ..." (emphasis added). David did produce a written statement from Elizabeth that was addressed to "whom it may concern" and stated "David can use my house as long as he needs it."

5. Thus, although Elizabeth's actual expectation that David would be compensated obviates a need to address the issue of the reasonableness of her understanding, nevertheless an inquiry into the reasonableness of the recipient's expectations could be relevant in some cases:

The law will not imply a promise to pay for services contrary to the intention of the parties, as where it is obvious that there was no intent on the part of either party that payment should be made, although, if the recipient of services should, as a reasonable person, have understood that the performer expected compensation, the actual belief of the recipient as to such matter is immaterial.

*Kintz v. Read*, 28 Wash.App. 731, 626 P.2d 52 (1981) (quoting *Western Asphalt Co. v. Valle*, 25 Wash.2d 428, 171 P.2d 159 (1946)); *see also Colvin v. Barrett*, 151 Me. at 348, 118 A.2d 775 (*quantum meruit* may lie if the recipient of services understood or ought to have understood that the claimant expected compensation and by her words or conduct justified that expectation).

[¶ 11] Elizabeth's note that "David can use my house as long as he needs it" falls short of an express contract. Yet the court's findings of Elizabeth's "full consent and support" for David's renovations, and that Elizabeth told David that "when he had it functioning as a print shop he could pay her $60.00 a month rent," and the other evidence, including Elizabeth's written statement that David could "use my house as long as he needs it," compel a finding that "services were rendered under circumstances consistent with contract relations." *Danforth v. Ruotolo*, 650 A.2d at 1335. David's reasonable expectation of a right to use the building for at least a substantial period of time for a below-market rental in exchange for the improvements to the building that he made with Elizabeth's approval is different in kind from the legal and moral duty to pay for the value of improvements that equity imposes in the unjust enrichment context.[6] The evidence as found by the court supports David's claim that he is entitled to recover in *quantum meruit* for the reasonable value of his labor and the materials that went into the improvements to the building.

[¶ 12] On remand, the court must determine the *reasonable* value of David's labor and the materials that were used to renovate and improve the building, *William Mushero, Inc. v. Hull*, 667 A.2d 853 (1995), offset by the value of David's use of the building.

The entry is:

Judgment vacated. Remanded to Probate Court for further proceedings consistent with the opinion herein.

---

**6.** *Compare Commerce Partnership 8098 Limited Partnership v. Equity Contracting Co.*, 695 So.2d 383, 387 (Fla.Dist.Ct.App.1997) ("[A] common form of contract implied in fact is where one party has performed services at the request of another without discussion of compensation. These circumstances justify the inference of a promise to pay a reasonable amount for the service. The enforceability of this obligation turns on the implied promise, not on whether the defendant has received something of value.") *with Reeves v. Alyeska Pipeline Serv. Co.*, 926 P.2d 1130, 1143 (Alaska1996) (the "obligation to make restitution that arises in [unjust enrichment] is not based upon any agreement between the parties, objective or subjective").