STATE OF MAINE                          SUPERIOR COURT
OXFORD, SS.                             CIVIL ACTION
                                        DOCKET NO. CV- 10 - 06

PETER PEPIN,

        Plaintiff

v.                                      DECISION

SHANNON L. BARTASH,

        Defendant

This nonjury trial came was heard on May 12, 2011. Plaintiff Peter Pepin was represented by John Jenness, Esq. Defendant Shannon L. Bartash was represented by Miklos Pongratz, Esq.

Plaintiff and defendant began a relationship in the spring of 2007. Around September of that year, plaintiff moved in to reside with defendant in defendant's home located on Gore Road in Raymond.

Both parties had been previously married. Defendant had three minor children who lived with her. The oldest, a boy, from her first marriage, and two younger girls, from her most recent marriage. Plaintiff had an adult daughter from his previous marriage, who did not live with him, but visited from time to time.

Plaintiff had retired from a career in the United States Air Force. He worked part-time at L.L. Bean in Freeport, and was an aspiring professional photographer. Defendant was a full-time schoolteacher in the Gorham public school system.

Plaintiff has an MBA in finance, and defendant relied on him for financial advice. Plaintiff advised defendant that improvements to her home would be a sound investment to build up equity in the home.

After moving into defendant's house, plaintiff began paying some of the household bills, but he paid no rent. After defendant received an inheritance from an uncle in the summer of 2008, she began to invest that money into home improvements. Improvements included a two-car garage, a finished room in the basement of the home, a mudroom connected to the home and the garage, basement windows, and a swimming pool. At plaintiff's insistence, a second story over the garage was added, along with a heating unit and decking around the swimming pool. Defendant invested substantial amounts of money she received from the inheritance into improvements to the home. Plaintiff also put money into the home, and paid over $42,000 that went toward the improvements in the home. In addition, he agreed to become obligated, jointly and several, with defendant, on a home equity loan in the amount of $61,900,[1] on which he made payments. Plaintiff also donated the money for a fence around the pool.[2]

The relationship of plaintiff and defendant bean to sour in late 2008, and ended in January of 2009. The defendant was primarily responsible for ending the relationship. Plaintiff was interested in marriage, but the defendant, having recently ended her second marriage did not want to remarry. In ending the relationship, it was not defendant's purpose to take advantage of plaintiff's financial contributions to defendants real estate, but rather a genuine desire to terminate the relationship because it was not working out.

Plaintiff seeks to receive from defendant the value of his financial contribution to the improvements to defendant's real estate. He has sued for breach of contract

---

[1] Much of that loan went toward paying off a prior home equity loan. When plaintiff and defendant separated in early 2009, defendant refinanced her mortgage, paying off the home equity loan, and extinguishing the obligation of plaintiff on the home equity loan.

[2] The fence around the pool was a gift.

(Count I), for quantum meruit (Count II), and for unjust enrichment (Count III). In Count IV and V, plaintiff also seeks to recover for conversion of certain property.

## I. BREACH OF CONTRACT

As to plaintiff's claim for breach of contract, the court finds that there was no contract between plaintiff and defendant, no agreement by the defendant to place defendant's property, or any portion of it, in plaintiff's name.

## II. QUANTUM MERUIT

Plaintiff did desire to become a joint owner of the defendant's real estate. His payments toward the improvements to the real estate were made with the hope that defendant would agree to place the home in joint tenancy, or some kind of shared ownership, with the plaintiff. Defendant, however, never agreed to place the property into joint tenancy, nor did she promise to put her property into any kind of shared ownership with plaintiff. Defendant never intended to marry plaintiff, but rather intended for the improvements made to her real estate to be for the benefit of herself and her children. There was no breach of an express contract as alleged in Count I, nor was there a contract implied in fact, as alleged by plaintiff in Count II. In Count II, plaintiff seeks recovery of what he contributed to the real estate pursuant to a theory of quantum meruit. Plaintiff did put money into defendant's real estate, and defendant knew that money of plaintiff was going toward changes and improvements to the real estate. Those are two of the elements that must be proven to recover in quantum meruit. *Paffhausen v. Balano*, 1998 ME 47, ¶ 8, 708 A.2d 269, 271. Plaintiff must also demonstrate, however, that under all the circumstances, it is reasonable for the plaintiff to expect repayment of what he paid toward the improvements to the real estate. It is this requirement that plaintiff has failed to prove. Under the circumstances of this case, it was not reasonable for plaintiff to expect payment. There was no "concurrent

3

intention" on the part of defendant to compensate the plaintiff for the money he put into the property. *Paffhausen*, ¶ 9, 708 A.2d at 272. Defendant's intent was that the improvements to the real estate benefit herself and her children. Plaintiff had expectations of becoming a joint or co-owner of defendant's property, and of marrying the defendant, but in the circumstances present in this case, those expectations were based on hope and were not reasonable, and do not support a quantum meruit recovery.[3]

## III. UNJUST ENRICHMENT

In Count III, plaintiff seeks recovery for the increased value of defendant's real estate resulting from his financial contribution pursuant to a theory of unjust enrichment. *See A.F.A.B. Inc. v. Town of Old Orchard Beach*, 639 A.2d 103 (Me. 1994) (*AFAB II*); *A.F.A.B. v. Town of Old Orchard Beach*, 610 A.2d 747 (Me. 1992) (*AFAB I*). In order to recover for unjust enrichment, there must be (1) a benefit conferred on the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (2) an acceptance or retention of the benefit by the defendant under such circumstances as would make it inequitable for the defendant to retain the benefit without paying for its value.[4] *See AFAB I*, 610 A.2d at 749.

In this case, plaintiff has demonstrated that over $42,000 of his funds went into defendant's real estate, and the defendant was aware of that fact. Plaintiff also presented evidence that the changes to defendant's real estate resulted in improvements, especially as to replacement value. Under the circumstances here,

---

[3] Plaintiff was aware that, during the time of the relationship between plaintiff and defendant, plaintiff had a last will and testament prepared that directed all of her assets to her three children.

[4] Recovery under unjust enrichment is measure by the value of the benefit retained. *Cummings v. Bean*, 2004 ME 93, ¶ 9, 853 A.2d 221, 224. Recovery pursuant to a theory of quantum meruit is measured by the value of the service provided. *Paffhausen*, 1998 ME 147, ¶ 7, 708 A.2d 269, 271.

4

however, it is not inequitable for the defendant to retain most of the value of these improvements without paying plaintiff for most of his financial contribution

Many of the improvements made to the property, toward which plaintiff contributed, were changes that the defendant had no great desire to be made, and to which she agreed only reluctantly, because of plaintiff's insistence that the work be done. One of the reasons defendant allowed many of the changes plaintiff wanted to be done was that defendant was aware that, although plaintiff was paying toward some of the household expenses, he was not paying rent. The changes to the real estate include the second story to the new garage, a heater for the swimming pool, and a deck around the swimming pool. The fence around the property was a gift from the plaintiff to the defendant and her family. Many of these changes to the real estate were changes that the plaintiff would directly benefit from, and were not of any substantial value to the defendant. In particular, the plaintiff wanted the second story over the garage to be a location for his photography business and studio. Plaintiff also insisted on the heater and the decking for the swimming pool, which the defendant did not want.

Moreover, in early 2009, after the plaintiff left the household, the defendant paid off the home equity loan to discharge the plaintiff from any further obligation on that loan, borrowing additional money to do so. Plaintiff also paid for a substantial amount of work that had to be done to finish off work that had begun earlier. This, combined with the decline in the real estate market, resulted in defendant being saddled with more debt, debt that comes close to exceeding, if not exceeding, the actual present market value of her real estate. Under all these circumstances, the court finds that it is not inequitable that the defendant not be required to pay to the plaintiff any where near the increased replacement value of her real estate to which plaintiff contributed

5

financially. As to Count III, the court finds that it is equitable that defendant should pay to plaintiff the amount of $5000.

## IV. CONVERSION

Testimony as to the disposition of personal property after the relationship ended was disputed. Plaintiff alleges that defendant failed to return certain personal property to the plaintiff. The defendant's position is that plaintiff abandoned some property or that there were swaps of property for expenditures made and that plaintiff received all the personal property to which he was entitled. The court finds that most of the property was not abandoned.

The court finds that plaintiff is entitled to be reimbursed for the following items in the following amounts, or, in the preferred alternative, to receive back the actual items, listed in A, B, and C below, which defendant shall make available to plaintiff within twenty days of the decision in this case.

| | | |
|---|---|---:|
| A. | 2 kayaks at $250 each, 2 kayak paddles at $15 each, and 2 roof racks at $10 each | $ 550.00 |
| B. | King size down comforter and flannel sheet set | 150.00 |
| C. | Cherry book case and desk | 800.00 |
| D. | One-half of payments made by plaintiff toward a delinquent home equity payment | 307.37 |
| | TOTAL owed by defendant to plaintiff | $ 1,857.37 |

The court is not persuaded that there was conversion as to any other property.

The entry is:

> As to Counts I and II, judgment for the defendant. As to Count III, judgment for the plaintiff in the amount of $5000. As to Counts IV and V, judgment for the plaintiff for $1,707.37, plus costs, unless within twenty-one days items are made available to plaintiff, in which case the amount of the judgment in Counts IV and V will be reduced accordingly.

DATED: July 8, 2011

_____
Robert W. Clifford
Justice, Superior Court