STATE OF MAINE
KENNEBEC, SS.

DISTRICT COURT
CIVIL ACTION
DOCKET NOS. SC-16-61 &
                CV-16-137
**CONSOLIDATED**

SHELDON SKIDGELL,
        Plaintiff

v.

SHAUN O'CONNOR,
        Defendant

**DECISION AND JUDGMENT**

SHAUN O'CONNOR,
        Plaintiff
v.

SHELDON SKIDGELL,
        Defendant

**CONSOLIDATED CASES**

## INTRODUCTION

These consolidated cases are before the court for resolution following a one-day non-jury trial held on December 11, 2017. The cases arise out of a dispute between the parties concerning construction work Sheldon Skidgell performed for Shaun O'Connor in 2015 on Knowles Road in Belgrade.

On February 22, 2016, Skidgell filed a small claims action in the District Court seeking $6000 as the balance he claimed was owned to him by O'Connor

under a construction contract. (Docket No. SC-16-61). On September 6, 2016, O'Connor filed a two-count complaint in the District Court against Skidgell alleging violations of the Maine Home Construction Contracts Act (Count I) and seeking damages for the pouring of a concrete slab/pad in an allegedly negligent and unworkmanlike manner (Count II). The actions were consolidated on September 27, 2016 and transferred to the Superior Court on April 4, 2017.

Trial was held on December 11, 2017, at which the court received the testimony of the following witnesses: Shaun O'Connor; Robert Greig; Terry Baker; Sheldon Skidgell; Larry Perkins; Gary Fuller, and; Michael Carrol. The court admitted into evidence Plaintiff's (O'Connor) Exhibits 1-7 and Defendant's (Skidgell) Exhibits 1-4, 6, 10-11. In lieu of oral argument the parties submitted post-trial briefs, the last of which being received by the court on January 8, 2018.

Based upon the evidence presented at trial, and after consideration of the written arguments, the court makes the following findings of fact.

## FINDINGS OF FACT

In the spring of 2015 Shaun O'Connor and his wife were considering the purchase and installation of a double-wide mobile home on a piece of property owned by Mr. O'Connor on Knowles Road in Belgrade. A wastewater disposal system application was filed with the Town of Belgrade and approved by the code enforcement officer in May 2015. *Plaintiff's Exhibit 1*. Sometime thereafter (probably in July 2015) Mr. O'Connor and Mr. Skidgell spoke about Skidgell performing the work to install the septic system as well as clearing trees, putting in a driveway and pouring a concrete pad upon which the double-wide would be sited. Although the testimony was not entirely clear, the court finds that the parties had a conversation in Mr. O'Connor's garage and that Mr. Skidgell visited the site and was interested in doing work for O'Connor on this job.

2

Mr. O'Connor testified that Skidgell gave him an oral "quote" of $18,000. Mr. Skidgell testified that he worked up an estimate of roughly $18,500, but that it was difficult to arrive at a "firm" figure because Mr. O'Connor was not certain as to what he wanted to do.[1] Both parties recalled that Mr. O'Connor wanted to look at "Uncle Henry's" before deciding what he wanted to do. Mr. O'Connor denied ever hearing the figure $18,500 as an estimate and insisted that the quote from Skidgell was $18,000. After listening and viewing the testimony of both witnesses, the court finds that Mr. Skidgell gave Mr. O'Connor an estimate in the range of $18,500. Defendant's Exhibit 10 is dated July 20, 2015. On July 23, 2015 O'Connor gave Skidgell a check in the amount of $4,000 for "septic system."[2] *Plaintiff's Exhibit 3.* Within a week Skidgell began work on the project. No written contract was executed between the parties prior to the commencement of work. O'Connor planned on purchasing the double-wide from Champion Homes. Originally, a delivery date was expected in August 2015 but that later changed to September. O'Connor gave a copy of the double-wide plans to Skidgell. The plans called for a cement pad of 42' X 26' 8". *Plaintiff's Exhibit 2.*

On August 14, 2015, O'Connor issued a check to Skidgell for $5,000 for "earthwork slab." *(Plt's Ex. 3).* On August 19, 2015 O'Connor gave Skidgell another check for $5,000 for "material." *(Id.)* According to Mr. O'Connor's testimony, he asked Mr. Skidgell for a contract but was told that he (Skidgell) would get to it when he could. Mr. Skidgell, on the other hand, asserted that the delay in

---

[1] Offered and admitted into evidence was Defendant's Exhibit 10, which is a rough draft of an estimate prepared by Mr. Skidgell dated July 20, 2015 in the amount of $18,470. Both parties agreed that this written estimate was not seen or given to Mr. O'Connor, and the court finds that it was prepared by Mr. Skidgell as a way to sketch out some numbers for himself so that he could provide an estimate to Mr. O'Connor. At the bottom of the document, Mr. Skidgell wrote: "no house selected at this time, estimated by Shaun's rough measurements."

[2] Both parties agreed that Skidgell wanted a $5,000 payment but O'Connor only paid $4,000.

getting a contract to Mr. O'Connor was due to the fact that (1) O'Connor left for a trip in August and (2) O'Connor was uncertain as to what he wanted. In any event, earthwork and tree cutting continued on the property but the concrete pad had not yet been poured.

On or about September 11 or 12, 2015, Skidgell and O'Connor met and Skidgell presented O'Connor with a "Contract" for the total sum of $20,140. *Plaintiff's Exhibit 4.* Mr. O'Connor's signature on the contract is dated September 12, 2015. *(Plt's Ex. 4; Def's Exh. 4).* The cement pad was poured on or about September 14, 2015. O'Connor testified that he signed the "contract" under duress because Skidgell told him that if he did not sign it he (O'Connor) would be charged by the hour for the equipment on his property. Moreover, he testified that the cement pad was not poured at this time and it needed to be poured and cured soon before the double-wide was placed on top of it. O'Connor testified that when he signed the contract he told Skidgell that he was doing so under duress. Skidgell denied that O'Connor said any such thing and further claimed that the actual cost of the project was slightly higher than his estimate because of extra fill that was needed and additional trees that had to be cleared. The double-wide was delivered and placed on the pad by Champion Homes on October 2, 2015. The court finds that Mr. O'Connor has failed to carry his burden of proving that he signed the contract "under duress."

In the meantime, on September 18, 2015 Mr. O'Connor wrote a note to Mr. Skidgell which reads as follows:

> 18,000.00 as agreed PD. 2,140 bal due when the new contract is signed with the correct dates and amount of yards of fill. Under the added clause. The original contract was a handshake and was honored by both parties.

*(Plt's Ex. 5).*

Mr. O'Connor enclosed a check for $4,000, also dated September 18, 2015, for "Final payment per original agreement." (*Def's Ex. 7*). Mr. Skidgell refused to accept the check as final payment because he believed he was entitled to $6,140 according to the contract signed by Mr. O'Connor on September 12, 2015. The relationship between the two men deteriorated quickly after that, although it is not clear to the court that it was ever cordial to begin with. There followed an exchange of insulting text messages between them. (*Def's Ex. 1*). On September 24, 2015 O'Connor filed a complaint with the Maine Attorney Generals' Consumer Protection Division alleging that Skidgell had taken advantage of him by having him sign a contract that was $2,140 more than what he considered the original price of $18,000. (*Def's Ex. 2*). He also alleged that the project took two months to complete when it should have taken only two weeks.[3] Mr. O'Connor did not otherwise complain about the quality of the work performed by Mr. Skidgell.

When Champion Homes delivered the mobile home on October 2, 2015, Mr. O'Connor was not present. The court finds that Champion Homes failed to center the double-wide mobile home on the cement pad such that it did not sit squarely or evenly on the pad. The consequence of this was that the pad extended approximately a foot on the right side. (*See Testimony of Robert Greig*). In his complaint filed in the District Court on September 6, 2016 (Count II), Mr. O'Connor alleged that Mr. Skidgell poured the pad wider that the plans called for. Specifically, Mr. O'Connor testified that the pad is 44' X 26'8" rather than 42' X 26'8." (*Plt's 2; see also Greig testimony*). Mr. O'Connor contends that because the pad was poured incorrectly, it

---

[3] In his letter, O'Connor claimed that at least a portion of the delay was due to the fact that Skidgell's grandmother and brother had died, his father had suffered a heart attack and his equipment broke down. Mr. Skidgell, on the other hand, complained that Mr. O'Connor was not available for periods of time and could not make up his mind as to what he wanted.

5

allows rain to get under the mobile home thereby posing a risk of mold and mildew damage.

Mr. Skidgell, for his part, testified that he poured the pad to 44 feet at the request and direction of Mr. O'Connor, who was present and assisted in "staking" the dimensions of the pad. After hearing the testimony of both Mr. O'Connor and Mr. Skidgell on this subject, and after hearing the testimony of Michael Carrol who assisted in the pouring of the pad, the court finds Mr. Skidgell's version of events more persuasive. It is obvious to the court that pouring the pad to 44 feet was done intentionally, and not simply as the result of mismeasurement. Given that, it makes little sense to the court that Mr. Skidgell would pour an extra 2 feet of pad on his own and without the direction of Mr. O'Connor, particularly since Mr. O'Connor participated in laying out the stakes for the pad.

In any event, the court finds that the biggest issue with the cement pad is not that it is 44 feet as opposed to 42 feet. The court finds that Mr. O'Connor suffered no harm at all from the fact that the pad is 44 feet versus 42 feet. The issue with the pad is the way Champion Homes placed the double-wide on it so that it appears off-center. As Mr. Greig testified, the issue is largely cosmetic. Finally, the evidence was convincing that the quality of the work performed by Mr. Skidgell was workmanlike in all respects. (*See Testimony of R. Greig and Gary Fuller*).

The court further finds that the original price of $18,000 or $18,500 was an estimate only and was not intended to be a fixed price but was subject to adjustment as the work progressed and as Mr. O'Connor decided what he wanted to do.

The court finds that the construction project at issue in this case was governed by the Home Construction Contracts Act – 10 M.R.S. §1486 et seq. *See Parker v. Ayre*, 612 A.2d 1283, 1284 (Me. 1992). Moreover, the actions of Mr. Skidgell and the oral contract he entered into with Mr. O'Connor violated the Act in several respects as follows: (1) work was commenced 1 ½ months before both the contractor

6

and the homeowner received a copy of the executed contract; (2) the contract as ultimately executed in September 2015 failed to include the warranty, resolution of disputes, consumer protection and Attorney General's website information as required by section 4187(7), (8), (13) & (14). In addition, the court finds that 10 M.R.S. §1488 relating to change orders was violated because there was an oral contract between the parties in July 2015.

## DISCUSSION

The court will first address the complaint filed by Mr. O'Connor in CV-16-137. In Count I of his complaint O'Connor alleged that he signed the contract on September 12, 2015 under duress. The court has found that this allegation has not been proved. Mr. O'Connor also alleged violations of the Home Construction Contracts Act (HCCA) and the court has found that this allegation has been proved in several respects.

Title 10 M.R.S. §1490(1) provides that a violation of the HCCA "shall constitute prima facie evidence of a violation of the Unfair Trade Practices Act, Title 5, chapter 10." "In order to recover damages for a violation of the UPTA the homeowner must show a loss of money or property that results from the violation." *William Mushero, Inc. v. Hall*, 667 A.2d 853, 855 (Me. 1995). *Accord Parker v. Ayre*, 612 A.2d at 1285; 5 M.R.S. §213(1). The court finds that Mr. O'Connor has failed to show that he suffered any loss of money or property as a result of any of the violations of the HCCA.[4]

Regarding Count II of Mr. O'Connor's complaint in Docket No. CV-16-137, the court finds that Mr. O'Connor has failed to show that Mr. Skidgell performed

---

[4] Violations of the HCCA are civil violations for which a forfeiture of not les than $100 nor more than $1000 may be adjudged. 10 M.R.S. §1490(2). Civil violations, however, are enforceable by the Attorney General or some other appropriate public official. 17-A M.R.S. §4-B(1).

the work on the pad/slab in an unworkmanlike or negligent manner or in a manner inconsistent with what Mr. O'Connor wanted. Moreover, the court finds that Mr. O'Connor has failed to prove that he has been damaged by Mr. Skidgell's workmanship.

Proceeding now to Mr. Skidgells's small claims complaint in Docket No. SC-16-61, the violations of the HCCA preclude Skidgell's recovery under the contract executed in September 2015. Nevertheless, he is entitled to recover for the services and materials he provided to Mr. O'Connor under an implied contract theory in *quantum meruit*.[5] *Runnels v. Quinn*, 2006 ME 7, ¶¶ 10, 21, 890 A.2d 713. The court finds, however, that Mr. Skidgell did not present sufficient credible evidence that the value of the work and materials he provided to Mr. O'Connor was $20,140. There was simply insufficient evidence to justify or explain the value of $20,140 as claimed by Mr. Skidgell. Rather, the evidence did establish that the value of the work he performed was what he had estimated in July 2015, namely, $18,470. Since Mr. O'Connor paid Mr. Skidgell $14,000 in July and August 2015, he still owes Mr. Skidgell the sum of $4,470.[6]

## CONCLUSION

The entry is:

Judgment for the Plaintiff Sheldon Skidgell against Defendant Shaun O'Connor in Docket No. SC-16-61 in the amount of $4,470.

---

[5] "A valid claim in *quantum meruit* requires: that (1) services to be rendered to the defendant by the plaintiff; (2) with the knowledge and consent of the defendant; and (3) under circumstances that make it reasonable for the plaintiff to expect payment." *Paffhausen v. Balano*, 1998 ME 47, ¶ 8, 708 A.2d 269. The court finds that Mr. Skidgell has satisfied all three elements of a claim in *quantum meruit*.

[6] Mr. O'Connor admitted at the trial that he still owed Mr. Skidgell $4,000, as the balance due on the oral quote Mr. O'Connor claimed was a fixed figure of $18,000. The court finds that the estimate was $18,470.

Judgment for Defendant Sheldon Skidgell against Plaintiff Shaun O'Connor on Counts I and II in District Court Docket No. CV-16-137.

The Clerk is directed to incorporate this Decision and Judgment into the Dockets of these consolidated cases by notation reference in accordance with M.R.Civ.P. 79(a).

DATED: April 9, 2018

William R. Stokes
Superior Court Justice