MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2017 ME 95
Docket:      Yor-15-515
Argued:      June 9, 2016
Decided:     May 11, 2017
Revised:     November 30, 2017

Panel:       ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Majority:    ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.
Concurrence/
   Dissent:  HJELM, J.

WAYNE KNOPE et al.

v.

GREEN TREE SERVICING, LLC

ALEXANDER, J.

[¶1]   Dorothy and Wayne Knope appeal from a judgment of the Superior Court (York County, *O'Neil, J.*), following a non-jury trial.   The judgment applied principles of unjust enrichment to determine that the Knopes are liable for certain charges beyond undisputed amounts of principal and interest owed pursuant to a promissory note owned by Green Tree Servicing, LLC.   The note had been secured by a mortgage, but an assignment failed to convey to Green Tree all of the rights created by the mortgage.

[¶2]  The Knopes contend that the contractual relationship between the parties, as established by the note, bars application of rules of unjust

enrichment to allow retention of funds that were obligations pursuant to the ineffective mortgage but were not obligations pursuant to the note. Because the trial court, in its decision, did not sufficiently distinguish charges that were obligations pursuant to the note from charges that were obligations only pursuant to the mortgage, we vacate the judgment and remand for the court to determine what amount, if any, Green Tree may retain pursuant to the note.

## I. CASE HISTORY

[¶3] The following facts were either alleged in the Knopes' complaint and deemed admitted because a default was entered against Green Tree, *see* M.R. Civ. P. 8(d); *Ireland v. Carpenter*, 2005 ME 98, ¶ 18, 879 A.2d 35, or found by the trial court and supported by the evidence in the record at trial. In November 2004, Dorothy and Wayne Knope executed and delivered a promissory note for $324,940 payable to GMAC Mortgage Corporation, to purchase a house in Eliot. The house was to be an income-producing property, not a residence for the Knopes. To secure the debt, the Knopes executed a mortgage deed to Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for GMAC Mortgage Corporation.[1] In early 2013,

---

[1] Although not expressly recited by the court, the mortgage, which was admitted in evidence at trial without objection, identified GMAC as the lender, and Mortgage Electronic Registration Systems, Inc., as both nominee for GMAC and mortgagee of record "FOR PURPOSES OF RECORDING THIS MORTGAGE."

Green Tree purchased various assets and mortgage servicing rights from GMAC, including the Knopes' loan. MERS purportedly assigned the mortgage to Green Tree in April 2013, but because MERS had acquired only the right to record the mortgage, the assignment to Green Tree conveyed nothing more than that right. *See Bank of America, N.A. v. Greenleaf*, 2014 ME 89, ¶¶ 15-16, 96 A.3d 700.

[¶4] In January 2013, the pipes in the second floor of the house burst, resulting in severe water damage that rendered the house uninhabitable. Faced with significant costs to repair the house, the Knopes did not make any further mortgage payments except for the escrow portion of two monthly payments. In May 2014, pursuant to 14 M.R.S. § 6301 (2016), the Knopes sent Green Tree a written demand for an accounting of their liability under the note and mortgage, but, as with earlier attempts at contact by the Knopes, Green Tree did not respond.

[¶5] In May 2014, the Knopes filed a complaint against Green Tree, seeking a declaratory judgment as to the amount owed to Green Tree on their note and mortgage, an accounting pursuant to section 6301, equitable relief, and a determination of impracticability of performance because the Knopes had been unable to make payments due to the loss of rental income. Shortly

after the Knopes filed this action, Green Tree commenced a separate action for foreclosure.

[¶6] Green Tree failed to file a timely answer to the Knopes' complaint, and on the Knopes' motion, the clerk entered a default. *See* M.R. Civ. P. 55(a). After Green Tree moved unsuccessfully to set aside the default, the court ordered that a hearing be held to determine the relief available to the Knopes.

[¶7] While this action was pending, but before the hearing was held, the Knopes repaired and then sold the property. Pursuant to an agreement reached by the parties, the foreclosure action was dismissed, and the Knopes paid to Green Tree both the undisputed portion of their debt on the note and, subject to the outcome of this action, additional amounts that were in dispute. Specifically, the Knopes paid to Green Tree $338,892.45, which included (1) the amount that the parties agreed was owed for principal and interest on the note, and (2) an additional amount of $19,265.68 charged by Green Tree but contested by the Knopes. The disputed amount represented reimbursements for payments that had been made by Green Tree: $14,701.49 in property taxes and insurance on the property; $945 in property preservation fees; $2,769.19 in "foreclosure fees"; and $850 in "legal fees."

5

The parties agreed that they would litigate the question of whether Green Tree was entitled to retain all or part of that disputed sum.

[¶8] The court held a non-jury trial in July 2015, where the Knopes pressed only their claim for a judgment declaring that Green Tree was not entitled to retain the disputed sum. The evidence included a copy of the promissory note, which the Knopes agreed had been owned by Green Tree before it was discharged. The note provided that in the event of a default, the holder of the note would be entitled to recover the costs and expenses of enforcing the note, including reasonable attorney fees. A mortgage deed was also admitted into evidence. The mortgage deed specified that the lender would be entitled to reimbursement for its payment of property taxes; hazard and property insurance; costs to secure and protect the property; and, in the event of nonpayment on the note, attorney fees and costs to foreclose.

[¶9] The Knopes argued at trial that the mortgage assignment from MERS to Green Tree was not effective to convey the mortgage-based rights for reimbursement of expenses paid by Green Tree and that Green Tree was therefore not entitled to retain payments for expenses that were allowed only by the mortgage. Because the Knopes had not previously raised a question regarding the effectiveness of the assignment, and in light of Green Tree's

asserton of surprise, the court granted Green Tree leave to submit additional evidence on the issue and granted the parties leave to file post-trial briefs.

[¶10] In September 2015, the court issued a judgment in favor of Green Tree based on a theory of unjust enrichment. The court determined that the mortgage assignment from MERS to Green Tree was not sufficient to give Green Tree "contractual authority to enforce rights created by the mortgage." "[T]o avoid unjust enrichment," the judgment allowed Green Tree to retain the entire disputed amount because Green Tree had paid expenses that were the Knopes' responsibility under the mortgage to protect Green Tree's "security interest," and to keep the property saleable while the Knopes were in default. The Knopes timely appealed.

## II. LEGAL ANALYSIS

[¶11] The Knopes challenge the court's application of unjust enrichment to award Green Tree the right to retain the disputed sum. We review both a default judgment and a declaratory judgment for abuse of discretion. *See Richter v. Ercolini*, 2010 ME 38, ¶ 18, 994 A.2d 404; *Linnehan Leasing v. State Tax Assessor*, 2006 ME 33, ¶ 30, 898 A.2d 408.

[¶12] To prevail on a claim for unjust enrichment, the complaining party must show that "(1) it conferred a benefit on the other party; (2) the

other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value." *Maine Eye Care Assocs., P.A. v. Gorman*, 2008 ME 36, ¶ 17, 942 A.2d 707 (citation omitted). In this way, the doctrine of unjust enrichment allows "recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay." *Paffhausen v. Balano*, 1998 ME 47, ¶ 6, 708 A.2d 269.

[¶13] The existence of a contractual relationship between the parties that addresses the sums in dispute "precludes recovery on a theory of unjust enrichment." *Nadeau v. Pitman*, 1999 ME 104, ¶ 14, 731 A.2d 863; *Paffhausen*, 1998 ME 47, ¶ 6, 708 A.2d 269. Thus, a limiting principle on the availability of restitution based on unjust enrichment is that "[a] valid contract defines the obligations of the parties *as to matters within its scope*, displacing *to that extent* any inquiry into unjust enrichment." Restatement (Third) of Restitution & Unjust Enrichment § 2(2) (Am. Law Inst. 2011) (emphasis added). The rationale behind this rule is that courts should not intervene to redefine rights and obligations that parties have already defined for

themselves through a voluntary contract. *See Wal-Noon Corp. v. Hill*, 119 Cal. Rptr. 646, 651 (Cal. Ct. App. 1975) ("[W]here the parties have freely, fairly and voluntarily bargained for certain benefits in exchange for undertaking certain obligations, it would be inequitable to imply a different liability and to withdraw from one party benefits for which he has bargained and to which he is entitled.").

[¶14]  Because of the "failed" mortgage, the only contract between the parties is the promissory note, and most of the expenses at issue here were not paid or recoverable pursuant to that note.  Nothing in the promissory note indicates that the Knopes bargained for or were entitled to most of the benefits they received—the payment, by Green Tree, of their property taxes, insurance, and property preservation costs.[2]  Thus, Green Tree's retention of payment for those expenses on an unjust enrichment theory is not barred by the law as articulated in the Restatement.  There is no apparent rationale for expanding the Restatement's limiting principle to apply to parties who simply

---

[2]  The payment of these benefits by Green Tree, and the acceptance of these benefit payments by the Knopes, facilitating the sale of their home in reasonable repair and without encumbrances, precludes the argument suggested in the dissent, referencing *Mortgage Electronic Registration Systems, Inc. v. Saunders*, 2010 ME 79, ¶ 9, 2 A.3d 289, that because Green Tree was presumptively on notice as to the insufficiency of the MERS assignment, Green Tree cannot recover the benefits accepted by the Knopes that facilitated sale of their home and payment of the note. *See* Concurring/Dissenting Opinion ¶¶ 41-42.

have *some* contractual relationship with one another, where their contract does not address the basis for the unjust enrichment claim.

[¶15] The United States District Court addressed issues similar to the limiting principle in the Restatement in *Federal Insurance Company v. Maine Yankee Atomic Power Company*, 183 F. Supp. 2d 76, 85 (D. Me. 2001), discussing whether contracting parties "intended to occupy the universe of their financial relationships by the terms and provisions of" their contract. *Maine Yankee*, which applied our opinion in *Nadeau v. Pitman,* does not bar recovery based on unjust enrichment. *Maine Yankee* expressly cautions that "parties may have any number of . . . contractual relationships having nothing to do with the issue in question and the Law Court cannot have intended to foreclose all unjust enrichment claims between such parties." *Me. Yankee*, 183 F. Supp. 2d at 84.

[¶16] The *Maine Yankee* opinion looked to the terms of the parties' existing contract to determine whether the contract addressed the obligation at issue in the unjust enrichment claim, concluding that it did not because the contract "simply [did] not speak to the benefit that would be conferred upon" Federal Insurance when Maine Yankee made payments on behalf of the third party for which Federal Insurance was secondarily responsible. *Id.* at 85-86.

Because the claim concerned obligations that the parties' contract did not address, the unjust enrichment claim was cognizable as long as it satisfied the substantive elements of the unjust enrichment doctrine. *Id.*

[¶17] The court thus clarified that the relevant question is whether the basis for the putative unjust enrichment claim concerns the same rights and obligations that the parties had already defined voluntarily by contract. *Id.* The court concluded that Maine Yankee could proceed in its unjust enrichment claim because (1) Federal Insurance had an existing, legally enforceable obligation to make certain payments if a third party failed to do so; (2) Maine Yankee "stepped in—not as a volunteer—and paid, the result being that Federal Insurance did not have to"; and (3) the contract between the Federal Insurance and Maine Yankee did not address the benefit that Maine Yankee conferred on Federal Insurance when Maine Yankee made the payments. *Id.* at 85-86.

[¶18] The court's reasoning is sound, and the same situation exists in this case: (1) the Knopes had a legally enforceable obligation to pay the taxes and insurance on their property and to keep the property in good repair; (2) presumably under the mistaken belief that it had the right to do so to protect a security interest that it thought it had acquired and to be reimbursed

11

for doing so, Green Tree stepped in—"not as a volunteer"—and paid the Knopes' taxes, insurance, and property preservation costs,[3] the result being that the Knopes did not have to; and (3) no contract between the Knopes and Green Tree addressed the parties' rights and responsibilities with respect to taxes, insurance, or preservation costs, which was the subject matter of the unjust enrichment award.

[¶19]    Holding the Knopes liable for restitution to avoid unjust enrichment does not represent "an impermissible end run around a voluntary structuring of relationships and their consequences," *Me. Yankee*, 183 F. Supp. 2d at 85, because the parties' only contractual agreement (the note) contains no voluntary structuring of rights and obligations regarding the payment of taxes, insurance, or preservation costs.  As in *Maine Yankee*, the parties' contract here, the note, "simply does not speak to the benefit that

---

[3]  Recovery in unjust enrichment is denied to a "volunteer" in order "to penalize those who 'thrust benefits upon others.'"  *Federal Insurance Co. v. Maine Yankee Atomic Power Co.*, 183 F. Supp. 2d 76, 83 n.10 (D. Me. 2001) (quoting Restatement of Restitution § 2 cmt. a (Am. Law. Inst. 1937)).  Here, Green Tree was not a volunteer—its expectation of repayment was reasonable and the Knopes could not reasonably have expected that they would not have to pay for the taxes, insurance, and preservation fees on their property.  In other words, "the circumstances of the transaction justif[ied Green Tree's] intervention in the absence of contract."  Restatement (Third) of Restitution & Unjust Enrichment § 2(3) (Am. Law Inst. 2011).  This case presents a common situation in which a party receiving a benefit not contemplated by a contract between the parties may be liable for restitution in order to avoid unjust enrichment.  *See id.* § 7 ("Mistaken performance of another's obligation gives the performing party a claim in restitution against the obligor to the extent of the benefit mistakenly conferred on the obligor."); *id.* cmt. a.

would be conferred upon" the Knopes by Green Tree's payment of taxes, insurance, or preservation costs. *Id.*

[¶20]  The Knopes argue that the promissory note, originally executed between the Knopes and GMAC Mortgage Corporation, combined with the mortgage to create an integrated contractual relationship between Green Tree and the Knopes that precludes Green Tree from proceeding on an unjust enrichment claim to retain expenditures that are not recoverable under the note.  However, the promissory note is separate from the mortgage, and the promissory note's obligations are separate from the claims related to enforcement of the mortgage.  Green Tree may have acted in the mistaken belief that it was a mortgagee, but that belief does not import the terms of the mortgage into the parties' only actual contract, the promissory note.  The mortgage, unlike the note, did not occupy any part of the universe of the parties' financial relationships.

[¶21]  Were the note and the mortgage contract treated, under the law, as one unit, or as related transactions involving the same parties, then actions on the note would always have to be joined and adjudicated with actions on the mortgage.  Parties could not achieve a dismissal of claims asserted under an insufficiently assigned mortgage, because the claims asserted under the

13

note would have to be considered in a unitary proceeding, barring final judgment until liability under the note had been adjudicated.[4]

[¶22] Actions under the mortgage may be treated as separate and distinct from actions under the note because notes are unsecured and separate from mortgages, presenting differing issues that may, sometimes, be adjudicated in separate proceedings. *See Greenleaf*, 2014 ME 89, ¶¶ 14-17, 96 A.3d 700; *Mortgage Elec. Registration Sys. v. Saunders*, 2010 ME 79, ¶ 10, 2 A.3d 289.

[¶23] With regard to at least the $14,701.49 paid for property taxes and insurance, and the $945 in property preservation fees, the evidence establishes, and the trial court found, that each of the elements of Green Tree's unjust enrichment claim has been met: (1) the benefits were conferred on the Knopes; (2) the Knopes had appreciation or knowledge of these benefits; and (3) acceptance or retention of the benefits by the Knopes, after payment of those benefits enabled them to sell the property without other encumbrances,

---

[4] Related claims between the same parties and involving the same transaction must be joined in the same action. *See Beegan v. Schmidt*, 451 A.2d 642, 645 (Me. 1982) (observing that when there is a final judgment against the plaintiff, claims the plaintiff has against the same defendant are extinguished with regard to all or any part of the transaction, or series of connected transactions, out of which the action arose). "The doctrine of res judicata prevents relitigation if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been litigated in the first action." *St. John v. Jordan*, 2008 ME 68, ¶ 5, 945 A.2d 1232 (quoting *Portland Water Dist. v. Town of Standish*, 2008 ME 23, ¶ 8, 940 A.2d 1097).

was under such circumstances as to make it inequitable for the Knopes to retain the value of those benefits. *See Gorman*, 2008 ME 36, ¶ 17, 942 A.2d 707.

[¶24] Because, by agreement, the mortgage is invalid and inapplicable as between Green Tree and the Knopes, and the benefits Green Tree conferred were not paid in accordance with and are not recoverable under any other contract, the trial court properly determined that these benefits were recoverable by Green Tree to avoid unjust enrichment. Accordingly, we affirm that portion of the trial court's judgment that authorized Green Tree to recover, or retain, the benefits paid for taxes, insurance, and property preservation costs, a total of $15,646.49. We must vacate and remand only for reexamination of the support for recovery of the foreclosure fees and legal fees based on an unjust enrichment theory and to determine what sums, if any, are due under the promissory note.[5]

The entry is:

> Judgment affirmed in part and vacated in part.
> Remanded to the Superior Court for further proceedings in accordance with this opinion.

---

[5] The Concurring/Dissenting Opinion, at ¶ 38, indicates that unjust enrichment cannot support the claim for attorney fees and foreclosure expenses. This opinion does not suggest otherwise.

15

HJELM, J., concurring in part and dissenting in part.

[¶25]  This appeal requires the Court to consider the extent of Wayne and Dorothy Knope's liability to Green Tree pursuant to the promissory note they executed that is now owned by Green Tree, *and* pursuant to the mortgage they executed in favor of a third party—but that was not properly assigned to Green Tree.  I concur with the Court's conclusion that this matter must be remanded for the Superior Court to determine the Knopes' contract-based liability pursuant to the note.  I disagree, however, with the Court's conclusion that the Knopes are or may be liable for any amount that is encompassed only within the mortgage, and I respectfully dissent from that part of the Court's opinion.

[¶26]  The Superior Court (York County, *O'Neil, J.*) determined that, pursuant to a theory of unjust enrichment, the Knopes are liable for all amounts that would be due under both the note that they executed in favor of GMAC Mortgage Corporation and the mortgage that they executed in favor of GMAC, which granted to MERS only the right to record the mortgage.  Green Tree now owns the note and is entitled to enforce its terms.  Green Tree did not acquire the mortgage-based rights, however, because the assignment of

that instrument from MERS to Green Tree was insufficient to convey those rights.

[¶27] After the Knopes fell into default on the note and tried unsuccessfully to obtain information from Green Tree about the amount they owed, they filed this action to force the issue. The resulting trial focused on whether the Knopes are liable for certain charges paid or incurred by Green Tree: property taxes and insurance on the Knopes' property, property preservation fees, "foreclosure fees," and "legal fees."

[¶28] The trial evidence included a copy of the promissory note, which provided that in the event of a default, the holder of the note would be entitled to recover the costs and expenses of enforcing the note, including reasonable attorney fees. Additionally, the court was presented with the mortgage deed, which provided that the lender would be entitled to reimbursement for its payment of property taxes; hazard and property insurance; costs to secure and protect the property; and, in the event of nonpayment on the note, attorney fees and the costs to foreclose. None of the expenses and charges enumerated in the mortgage overlaps with the amounts due pursuant to the note.

[¶29]  In its judgment, the trial court correctly determined that Green Tree could not contractually enforce the rights created in the mortgage because of the deficient assignment of that instrument from MERS.  *See Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, 96 A.3d 700.  "[T]o avoid unjust enrichment," however, the court allowed Green Tree to retain the entire disputed amount—including the amounts that are recoverable only pursuant to the mortgage.

[¶30]  In my view, the court's award to Green Tree of those mortgage-based expenses based on the equitable doctrine of unjust enrichment is erroneous for two reasons.  First, it amounted to an improper restructuring of the parties' actual contractual relationship.  And second, Green Tree is not entitled to equitable relief when its claim is based on rights created by a mortgage that it knew or should have known it did not own.  I will address these points in turn.

A.    Existence of a Contractual Relationship

[¶31]  I agree with the Court's explanation of the beneficent principles that underlie the doctrine of unjust enrichment.  In short, it creates a remedy, available in limited circumstances, to prevent an "inequitable retention of a benefit," Horton & McGehee, *Maine Civil Remedies* § 7-3 at 176 (4th ed. 2004),

and allows "recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay," *Paffhausen v. Balano*, 1998 ME 47, ¶ 6, 708 A.2d 269.

[¶32]  As the Court correctly observes, however, the existence of a contractual relationship between the parties "precludes recovery on a theory of unjust enrichment."  Court's Opinion ¶ 13; *Nadeau v. Pitman*, 1999 ME 104, ¶ 14, 731 A.2d 863 (quotation marks omitted); *Paffhausen*, 1998 ME 47, ¶ 6, 708 A.2d 269; *see also* Restatement (Third) of Restitution & Unjust Enrichment § 2(2) (Am. Law Inst. 2011) ("A valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment."); *id.* cmt. c; *Cty. Comm'rs v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 607-08, 608 n.8 (Md. 2000) (citing additional cases therein).  This is because when the parties themselves define their rights and obligations by entering into a valid and enforceable contract, it is unnecessary and wholly inappropriate for a court to supersede the parties' own agreement and redefine the relationship that the parties have chosen to create.  This critical point is articulated powerfully in authority that the Court itself views favorably: "[W]here the parties have freely, fairly and

voluntarily bargained for certain benefits in exchange for undertaking certain obligations, it would be inequitable to imply a different liability and to withdraw from one party benefits for which he has bargained and to which he is entitled." *Wal-Noon Corp. v. Hill*, 119 Cal. Rptr. 646, 651 (Cal. Ct. App. 1975); *see also Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004). Indeed, it is the very *absence* of a contract that provides the justification for the law to intervene "on the grounds of fairness and justice" through judicial application of the equitable doctrine of unjust enrichment. *See Nadeau*, 1999 ME 104, ¶ 14, 731 A.2d 863 (quotation marks omitted).

[¶33] Therefore, as a matter of contract—but, contrary to the trial court's judgment, *not* unjust enrichment—Green Tree is entitled to recover amounts due from the Knopes pursuant to the note, because the evidence indisputably establishes that Green Tree and the Knopes had a contractual relationship arising from that note. Of the sums claimed here by Green Tree, the note allows recovery of any portion of "legal fees" expended by Green Tree that arose from efforts to enforce the note. I agree with the Court that this matter must be remanded for the trial court to determine that amount.

[¶34] The remaining amounts in dispute here—taxes and insurance, property preservation costs, "foreclosure fees," and any portion of "legal fees"

not attributable to the note—are not encompassed within the terms of the note but rather would be recoverable pursuant to the provisions of the mortgage. Due to the deficient assignment from MERS, Green Tree did not acquire any rights to foreclose on the encumbered property or to recover expenses identified in the mortgage. The resulting question is whether, based not on breach of contract but rather on a theory of unjust enrichment, Green Tree is entitled to reimbursement for expenses that are only recoverable pursuant to mortgage-based contract rights that Green Tree does not hold. In my view, unjust enrichment is not available to Green Tree as a remedy to recover those mortgage-based expenses, because the mortgage integrally relates to the same subject matter encompassed by the note to which Green Tree and the Knopes *were* parties.

[¶35] As the U.S. District Court for the District of Maine has reasoned, where a contract between the parties covers "the same subject matter" underlying a claim for unjust enrichment, the existence of that contract operates as a bar to recovery in equity, even where the amounts sought in the unjust enrichment claim are not expressly encompassed within the terms of the contract. *Fed. Ins. Co. v. Me. Yankee Atomic Power Co.*, 183 F. Supp. 2d 76, 84 (D. Me. 2001) (applying Maine law). Just as the existence of contractual

21

terms precludes a claim for unjust enrichment on matters directly addressed in that contract, a contract that more generally reveals an intention by the parties "to occupy the universe of their financial relationships" has the same effect, because "[r]ecovery under a theory of unjust enrichment independent of or parallel to the [contract] would then be an impermissible end run around a voluntary structuring of relationships and their consequences." *Id.* at 85.[6]

[¶36]  That is the case here.  In the underlying secured loan transaction, GMAC (the original lender) and the Knopes created a comprehensive set of rights and obligations, some of which they chose to make part of the promissory note, with the remainder allocated to the mortgage.  The structure of this highly regulated transaction establishes an intent "to occupy the

---

[6]  The federal court concluded that Maine Yankee was entitled to proceed with its unjust enrichment claim against Federal Insurance despite the existence of a contract among Maine Yankee, Federal Insurance, and a third party.  The circumstances of that action, however, were factually distinct from this case because there the contract primarily defined the relationship between Maine Yankee and the third party.  *Fed. Ins. Co. v. Me. Yankee Atomic Power Co.*, 183 F. Supp. 2d 76, 82-86 (D. Me. 2001).  Federal Insurance "took on no obligations" in that contract, the contract did not identify any benefits that Federal Insurance would receive pursuant to the contract, and Federal Insurance's role as a signatory to the contract "guaranteed only that it did not object to the arrangement" between Maine Yankee and the third party.  *Id.* at 85.  Given these circumstances, the court concluded that "[t]his is not the sort of contractual relationship that, under Maine law and general principles of unjust enrichment, forecloses recovery," and that Federal Insurance could not use the existence of that contract as a shield against Maine Yankee's unjust enrichment claim.  *See id.* at 85-86.

In contrast, the contract between Green Tree and the Knopes—namely, the promissory note—creates rights and imposes obligations on both parties; neither is a bystander, as Federal Insurance was in the contract at issue in that case, which is therefore distinguishable in result.

universe of their financial relationship[]" with regard to the overall loan agreement. *Id.* Now, Green Tree is left to seek an equitable remedy because it is unable to enforce rights to which GMAC and the Knopes agreed by contract—rights that Green Tree has never acquired.

[¶37] Green Tree and the Knopes, however, *were* parties to a contract—namely, the note—that covered the same subject matter as the mortgage forming the basis for at least part of the court's award. Unjust enrichment is therefore not available here, because that doctrine is reserved for circumstances where an enforceable contract does *not* exist and judicial intervention would be needed to prevent an inequitable retention of benefits. *See Paffhausen*, 1998 ME 47, ¶ 6, 708 A.2d 269. Because of the unique purposes served by the doctrine of unjust enrichment, it cannot properly be used here as an "end run," *Me. Yankee*, 183 F. Supp. 2d at 85, to fill in a gap created by Green Tree's incomplete acquisition of contract rights benefiting GMAC in the original transaction. In other words, it is not the role of the courts to redefine a contract into which these parties—including Green Tree, a sophisticated concern that is in the business of engaging in these kinds of transactions—chose to enter.

23

[¶38]  I also note that, as Green Tree itself acknowledged at oral argument, invocation of unjust enrichment cannot support an award of attorney fees and expenses incurred in the foreclosure action, because Green Tree's payment of those expenses did not inure to the Knopes' benefit.  This precludes the availability of an unjust enrichment claim as a matter of law for that aspect of Green Tree's claim.  *See Me. Eye Care Assocs., P.A. v. Gorman*, 2008 ME 36, ¶ 17, 942 A.2d 707 (stating that one element of a claim for unjust enrichment is "conferr[ing] a benefit on the other party" (quotation marks omitted)).

[¶39]  Because the parties were contractually engaged through the note that accompanied the mortgage, Green Tree cannot obtain relief in unjust enrichment for any expenses addressed exclusively in the mortgage.  For this reason alone, I conclude that Green Tree is not entitled to reimbursement for taxes and insurance, property preservation costs, and foreclosure fees.[7]

---

[7] Contrary to the Court's suggestion, *see* Court's Opinion at ¶¶ 21-22, this result would not bar a party from seeking remedies available pursuant to a note it owns even where that party did not acquire the mortgage due to a deficient assignment.  Viewing a mortgage as one element of the underlying transaction that also includes the note merely precludes the owner of the note from obtaining relief, based on notions of equity, otherwise available pursuant to the mortgage that would have been available as a matter of contract had that party also owned the mortgage rights.  The converse, however, is *not* true: if a party is barred from asserting a claim pursuant to a mortgage because, like Green Tree, it did not actually acquire that mortgage, that party may nonetheless seek to enforce the provisions of a note that it *does* own.

B.     *Saunders* and *Greenleaf*

[¶40]  There is an entirely separate reason why, in the circumstances of this case, Green Tree is not entitled to recover in unjust enrichment: the basis for Green Tree's claims arose when Green Tree knew or should have known that it would not have any right to recover any of the expenses otherwise allowed by the mortgage.

[¶41]  MERS purported to execute an assignment of the mortgage to Green Tree in April 2013.  Three years earlier, we issued our decision in *Mortgage Electronic Registration Systems, Inc. v. Saunders*, a case where MERS sought to foreclose on property based on a mortgage that identified MERS "solely as nominee for Lender"—just as in the mortgage that MERS received from the Knopes.  2010 ME 79, ¶ 9, 2 A.3d 289.  In *Saunders*, we held that the "only rights" that MERS acquired were "bare legal title to the property for the sole purpose of recording the mortgage and the corresponding right to record the mortgage with the Registry of Deeds."  *Id.* ¶ 10.  We also concluded,

> Not one of the mortgage covenants in the document, including the [mortgagors'] obligations to make timely payments on the note, pay property taxes, obtain property insurance, and maintain and protect the property, is made to MERS or in favor of MERS.

*Id.* Interestingly for present purposes, the obligations that we happened to enumerate in this passage—expenses that MERS was not able to recoup—include many of the expenses at issue in the case at bar.

[¶42] *Saunders* therefore made clear that a mortgage in the same form used by MERS in the transaction with the Knopes is insufficient to allow MERS to do anything other than record the instrument, and that MERS did not have standing to seek a judgment of foreclosure. *Id.* ¶¶ 15, 26. Because we had issued our decision in *Saunders* well before Green Tree accepted an assignment of the mortgage executed by the Knopes, Green Tree was fully on notice that it would receive almost nothing through that assignment—and certainly not the rights it seeks to assert in this action.

[¶43] Our 2014 decision in *Greenleaf* was the inevitable and wholly foreseeable next step. In that case, a party to which MERS had assigned a mortgage containing the identical language addressed in *Saunders* sought to foreclose on the mortgaged premises. We reiterated that a mortgage to MERS as the nominee for the lender gave MERS only the right to record the mortgage and "did not, as a matter of law, grant to MERS any right to foreclose on the property." 2014 ME 89, ¶ 15, 96 A.3d 700. An assignment of such a mortgage from MERS to some other entity therefore "granted to [the assignee]

only what MERS possessed—the right to record the mortgage as nominee—because MERS could not have granted to another person or entity any greater interest in the mortgage than that enjoyed by MERS." *Id.* ¶ 16. For the same reason that MERS itself is unable to enforce rights created by the mortgage, MERS's assignees are left with no arrows in their quiver. *See id.* ¶ 17.

[¶44] This chronology demonstrates that parties such as Green Tree were fully aware at least as early as 2010 that the type of mortgage that Green Tree purported to acquire from MERS in 2013 would not convey rights to foreclose or to obtain reimbursement of expenses paid pursuant to the provisions of the mortgage. Green Tree accepted that assignment despite being placed on full notice, by our clear explication of the law, of how few rights—if any—it would thereby acquire.[8]

[¶45] Given the chronology of Green Tree's actions in relation to our decisions explaining the law governing MERS assignments, I conclude that, as a matter of law, Green Tree is not entitled to benefit from the court's equitable

---

[8] While Green Tree incurred a number of the charges for which it seeks reimbursement from the Knopes before our opinion in *Greenleaf* was issued, it continued to incur such charges *even after* the issuance of that decision—and conducted itself apparently as if it possessed the rights that the lessons of *Saunders* and *Greenleaf* clearly established it did not have. Nonetheless, the temporal demarcation signified by the date of the *Greenleaf* opinion is not particularly significant because of the clear holding in *Saunders*, which was issued years before the assignment from MERS to Green Tree. *See Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, 96 A.3d 700; *Mortg. Elec. Registration Sys., Inc. v. Saunders*, 2010 ME 79, 2 A.3d 289.

authority to prevent unjust enrichment. Green Tree in fact did not hold the rights that motivated them to incur expenses, and Green Tree can only have known that. Regardless of whether or to what entity the Knopes may bear liability for the charges for which Green Tree seeks recovery, that liability cannot properly be predicated on notions of equity when Green Tree chose to act in disregard of existing law that defined its rights.

[¶46] Therefore, on all aspects of Green Tree's claim against the Knopes except any amount that it can prove is due pursuant to the note, I would vacate and remand for entry of judgment for the Knopes.

---

Patrick S. Bedard, Esq. (orally), Bedard & Bobrow, P.C., Eliot, for appellants Dorothy and Wayne Knope

Cathy A. Mohan, Esq., and Richard Briansky, Esq. (orally), McCarter & English, LLP, Hartford, Connecticut, and Paul J. Greene, Esq., Global Sports Advocates, LLC, Portland, for appellee Green Tree Servicing, LLC

York County Superior Court docket number CV-2014-102
FOR CLERK REFERENCE ONLY