**Opinion filed March 28, 2013**



# In The

# Eleventh Court of Appeals

_____

## No. 11-11-00079-CV
_____

## PROTOCOL TECHNOLOGIES, INC., Appellant

## V.

## J.B. GRAND CANYON DAIRY, L.P., Appellee

**On Appeal from the 266th District Court**

**Erath County, Texas**

**Trial Court Cause No. CV30212**

### O P I N I O N

This is an appeal from a summary judgment entered in favor of a defendant in a suit to recover from it for agricultural products supplied to a third party. We affirm.

*Background Facts*

J.B. Grand Canyon Dairy, L.P. (J.B.) entered into a written agreement to convey a dairy located near Dublin to Jeff Whalen in 2007. Prior to completing the conveyance, Whalen assumed control of the dairy on April 1, 2007, and operated it as "JW Grand Canyon Dairy, L.L.C." for several months. J.B. and Whalen/JW Grand Canyon Dairy also executed a lease

agreement wherein JW Grand Canyon Dairy agreed to lease the dairy prior to completing the purchase.

Protocol Technologies, Inc. (Protocol) is a supplier of cattle feed. It asserted in its pleadings that Whalen opened a line of credit with Protocol in May 2007 to purchase feed for the cattle at the dairy and that Whalen made timely payments on the account through February 2008. Protocol alleges that Whalen then fell into arrears in paying for the cattle feed. Whalen subsequently issued a check to Protocol in April 2008 in the amount of $8,211.22 to bring the account current. However, Whalen stopped payment on the check. The unpaid amount of the account had increased to $20,272.93 by the time Whalen filed for bankruptcy.

Protocol filed suit against J.B. for the unpaid balance of the account. Protocol alleged that J.B. was liable for the feed supplied because it "charged Jeff Whalen with responsibility of the daily operations of its dairy business." Protocol additionally alleged that J.B. could be held liable for the debt because it permitted Whalen to use the business name of "JW Grand Canyon Dairy, LLC" and allowed him to refer to himself as the owner of the dairy without disclosing the contemplated conveyance to the public. Protocol asserted that these acts, coupled with J.B. retaining ownership of the dairy during the period of Whalen's operation, made Whalen "at least the agent of [J.B.], if not a *de facto* joint venture or partner of [J.B.] in that dairy business."

Protocol alleged causes of action against J.B. for breach of contract, conversion, fraud, negligence, quantum meruit, unjust enrichment, and the Texas Theft Liability Act. Protocol initially filed a traditional motion for summary judgment on its equitable claims of unjust enrichment and quantum meruit. The trial court considered Protocol's motion for summary judgment at a hearing conducted on February 18, 2010. The trial court denied Protocol's motion for summary judgment after the hearing. Protocol subsequently filed a motion for reconsideration of its motion for summary judgment. In the interim, J.B. filed its own traditional motion for summary judgment seeking to negate Protocol's causes of action. The trial court simultaneously considered Protocol's motion for reconsideration and J.B.'s motion for summary judgment. The trial court entered a written order denying Protocol's motion for reconsideration and granting J.B.'s motion for summary judgment in all respects.

*Issues*

Protocol challenges the trial court's rulings in three issues. In its first issue, Protocol contends that the trial court erred when it failed to grant summary judgment for Protocol after the

2

first hearing on the motion. Protocol, in its second issue, attacks the trial court's order granting summary judgment in favor of J.B. on Protocol's equitable causes of action. In its third issue, Protocol challenges the trial court's order granting summary judgment in favor of J.B. on Protocol's remaining causes of action.

*Standard of Review*

We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A trial court must grant a traditional motion for summary judgment if the moving party establishes that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991). Once the movant establishes a right to summary judgment, the nonmovant must come forward with evidence or law that precludes summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979). When reviewing a traditional summary judgment, the appellate court considers all the evidence and takes as true evidence favorable to the nonmovant. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). The appellate court "must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented" and may not ignore "undisputed evidence in the record that cannot be disregarded." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755, 757 (Tex. 2007).

*Analysis*

Protocol challenges the initial denial of its traditional motion for summary judgment in its first issue. In doing so, Protocol focuses a great deal of attention on the arguments presented by counsel at the oral hearing on the motion. Generally, the denial of a motion for summary judgment is not reviewable on appeal because it is not a final judgment. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996); *Novak v. Stevens*, 596 S.W.2d 848, 849 (Tex. 1980). The order initially denying Protocol's motion for summary judgment is an interlocutory order that is not reviewable on appeal. Moreover, the matters presented during the oral hearing on a motion for summary judgment have no bearing on appeal because "the grounds for summary judgment and the issues defeating entitlement thereto" must be presented in writing to the trial court before the hearing. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337,

3

343 n.7 (Tex. 1993) (citing *Clear Creek Basin Auth.*, 589 S.W.2d at 677).  Protocol's first issue is overruled.

Protocol's second issue challenges the trial court's order granting J.B.'s traditional motion for summary judgment on Protocol's equitable claims of quantum meruit and unjust enrichment.  Quantum meruit is an equitable theory of recovery that is based on an implied agreement to pay for benefits received.  *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).  To recover under the doctrine of quantum meruit, a plaintiff must establish that (1) valuable services and/or materials were furnished, (2) to the party sought to be charged, (3) which were accepted by the party sought to be charged, and (4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient.  *Id.*  Quantum meruit "is founded [on] the principle of unjust enrichment." *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985).  Unjust enrichment is an implied-contract theory stating one should make restitution when it would be unjust to retain benefits received.  *Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006, no pet.).  Unjust enrichment allows recovery "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."  *Heldenfels Bros., Inc.*, 832 S.W.2d at 41.  It is "based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted."  *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005).

J.B. asserted in its traditional motion for summary judgment that an express contract between Protocol and Whalen barred Protocol's equitable causes of action.  Generally, a party may not recover under quantum meruit or unjust enrichment if there is an express contract that covers the services or materials furnished.  *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683–84 (Tex. 2000); *Murray v. Crest Constr., Inc.*, 900 S.W.2d 342, 345 (Tex. 1995); *Christus Health v. Quality Infusion Care, Inc.*, 359 S.W.3d 719, 723 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Pepi Corp. v. Galliford*, 254 S.W.3d 457, 462 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Burlington N. R.R. Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex. App.—Texarkana 1996), *aff'd*, 966 S.W.2d 467 (Tex. 1998).  This rule is applicable not only when the plaintiff is seeking to recover in equity from the party with whom he expressly contracted, but also when the plaintiff is seeking recovery from a third party foreign to the original contract but who is alleged to have benefited from its performance.  *Hester v. Friedkin*

4

*Cos., Inc.*, 132 S.W.3d 100, 106 (Tex. App.—Houston [14th Dist.] 2004, pet. denied); *Iron Mountain Bison Ranch, Inc. v. Easley Trailer Mfg., Inc.*, 42 S.W.3d 149, 160 (Tex. App.—Amarillo 2000, no pet.); *W & W Oil Co. v. Capps*, 784 S.W.2d 536, 537 (Tex. App.—Tyler 1990, no writ).

The existence of an express contract is an affirmative defense to an equitable claim of quantum meruit or unjust enrichment. *Christus Health*, 359 S.W.3d at 722; *Tricon Tool & Supply, Inc. v. Thumann*, 226 S.W.3d 494, 500 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all of the elements of the affirmative defense. *Rhône–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). In its second issue, Protocol attacks the summary judgment evidence supporting J.B.'s allegation of an express contract. Protocol also asserts that J.B. did not present a written contract as a part of the summary judgment evidence. In this regard, Protocol asserted that an application for credit completed by Whalen and the corresponding "open account" he had with Protocol did not constitute an express contract that bars its equitable claims for relief.

J.B. relied upon the affidavit of Dr. Jimmy L. Horner, president and chief executive officer of Protocol, to support its allegation of an express contract. Horner stated in the affidavit that "[o]n or about the 10th of May, 2007 Jeff Whalen executed an application for credit with [Protocol] and from and after that date we supplied him with feed supplements for dairy cattle to maintain their health and productivity."[1] In this regard, there is no factual dispute that Protocol supplied feed to Whalen pursuant to an open account arrangement.

The San Antonio Court of Appeals considered a similar situation in *San Antonio Masonry & Tool Supply, Inc. v. Epstein & Sons International, Inc.*, 281 S.W.3d 441, 445–46 (Tex. App.—San Antonio), *judgment withdrawn pursuant to settlement*, No. 04-04-00032-CV, 2005 WL 1458065 (Tex. App.—San Antonio June 22, 2005, no pet.). A supplier provided masonry materials to a subcontractor under an open account arrangement. 281 S.W.3d at 445–46. The court held that this arrangement constituted an express contract that precluded the supplier's claim for quantum meruit against the general contractor for the value of the materials provided.

---

[1]Protocol included Horner's affidavit as a part of its summary judgment evidence in support of its motion for summary judgment. J.B. attached a copy of the affidavit to its motion for summary judgment.

We agree with the holding in *San Antonio Masonry* that goods or materials supplied pursuant to an open account are the subject of an express contract. This conclusion is supported in this case by virtue of the fact that Protocol asserted a breach of contract claim wherein it alleged that "[J.B.] failed to provide the *bargained for consideration* for feed used in its dairy operation by Whalen . . . and has failed to pay the *contracted* for price of the feed" (emphasis added). As noted by the court in *San Antonio Masonry*, pleadings containing a judicial admission negating a cause of action may serve as the basis for granting summary judgment. *Id.* Accordingly, the pleadings and summary judgment evidence conclusively establish the existence of an express contract covering the feed furnished by Protocol that bars its claims for equitable relief. Protocol's second issue is overruled.

Protocol's third issue concerns its "legal claims" against J.B. for conversion, fraud, negligence, and the Texas Theft Liability Act.[2] Protocol based its claims against J.B. for these causes of action on the allegation that Whalen was J.B.'s agent or partner. J.B. sought summary judgment on these claims on the ground that it was not the agent or partner of Whalen. Specifically, J.B. asserted that an agency relationship did not exist between it and Whalen because J.B. did not hold Whalen out as having authority to act on its behalf and Whalen had no express authority to act on its behalf. J.B. additionally asserted that it had no partnership or joint venture agreement with Whalen.

Protocol first argues that J.B. did not plead its allegation that no agency or partnership relationship existed between it and Whalen. However, both J.B.'s original answer and its first amended original answer contained "verified denials" denying that any partnership or joint venture relationship existed between it and JW Grand Canyon Dairy. Furthermore, Protocol did not raise this objection in its response to J.B.'s motion for summary judgment. Accordingly, Protocol waived any pleading error. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494–95 (Tex. 1991) (If a party relies on an unpleaded affirmative defense to support a motion for summary judgment, the nonmovant must object to that ground in its response to the motion for summary judgment in order to avoid trying that issue by consent.). Protocol also argues that there is summary judgment evidence of a de facto partnership or joint venture relationship between J.B. and Whalen. It bases this contention on the nature of the detailed agreements

---

[2]Protocol omitted its breach of contract claim in listing its legal claims in connection with its third issue.

6

between J.B. and Whalen pertaining to the operation of the dairy during the contemplated sale period and the "secrecy" "cloaking" their relationship.

An agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority). *Gaines v. Kelly*, 235 S.W.3d 179, 183 (Tex. 2007). The various agreements that J.B. and Whalen executed specifically provided that "[t]he parties' relationship is an ordinary commercial relationship, and they do not intend to create the relationship of principal and agent, partnership, joint venture, or any other special relationship." Accordingly, the contracts governing the parties relationship negates the existence of an agency relationship by actual or express authority. Protocol bases its agency allegations of apparent authority solely on its dealings with Whalen. In this regard, Protocol does not assert any reliance on dealings directly between it and J.B. Declarations of the alleged agent, without more, are incompetent to establish either the existence of the alleged agency or the scope of the alleged agent's authority. *Gaines*, 235 S.W.3d at 183–84. Instead, apparent authority must be based on the acts of the principal. *Id.*

The Texas Supreme Court extensively addressed the requirements of establishing a partnership/joint venture relationship in *Ingram v. Deere*, 288 S.W.3d 886, 896 (Tex. 2009).[3] These factors are: (1) receipt or right to receive a share of profits of the business; (2) expression of intent to be partners in the business; (3) participation or right to participate in control of the business; (4) sharing or agreeing to share: (A) losses of the business or (B) liability for claims by third parties against the business; and (5) contributing or agreeing to contribute money or property to the business. 288 S.W.3d at 896. Proof of each of these elements is not necessary to establish a partnership. *Id.* Instead, all these factors should be considered in determining whether a partnership exists, and no single factor is determinative. *Id.* at 896–97.

As noted previously, the agreements executed by J.B. and Whalen disclaimed the existence of an agency or partnership relationship. Additionally, J.B. included the affidavit of Jimmy G. Beyer, president of Beyer Management, Inc., the general partner of J.B., as a part of its summary judgment evidence. Beyer stated that J.B. had no control of the dairy operations while Whalen had control of the dairy, that Whalen received all profits from the dairy during this

---

[3]The court noted in *Ingram* that there is no legal or logical reason for distinguishing a joint venture from a partnership on the question of formation of the entity. 288 S.W.3d at 894.

period, and that Whalen was responsible for all expenses incurred at the dairy during the period. Accordingly, the summary judgment evidence offered by J.B. conclusively established that it and Whalen did not have a partnership or agency relationship. It was then incumbent upon Protocol to present summary judgment evidence raising a genuine issue of material fact. Protocol responded to J.B.'s motion for summary judgment by presenting its de facto partnership argument to the trial court based upon its reading of the agreements between J.B. and Whalen.

The Tyler Court of Appeals addressed a similar situation in *A & S Electrical Contractors, Inc. v. Fischer*, 622 S.W.2d 601, 602 (Tex. App.—Tyler 1981, no writ). The claimant in *A & S* furnished labor and materials to the tenant of a building. When the tenant defaulted on its oral contract to pay the supplier, the supplier filed suit against the owners of the building, alleging that a principal-agent relationship existed between the owners and the tenant. The building owners filed a motion for summary judgment supported by their affidavits disclaiming the existence of any relationship other than a landlord-tenant relationship. 622 S.W.2d at 603. In the absence of competent summary judgment evidence from the supplier raising a genuine issue of material fact on the agency issue, the court of appeals affirmed summary judgment in favor of the building owners.

The holding in *A & S* is applicable to this case. While the written agreements between J.B. and Whalen were extensive, they did not create a relationship other than buyer-seller and landlord-tenant. The agreements specifically disclaimed the existence of an agency or partnership. Furthermore, the summary judgment evidence and pleadings establish that Protocol dealt solely with Whalen and that Protocol had no knowledge of J.B.'s connection to the dairy until after Whalen defaulted. Accordingly, Protocol's third issue is overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.


TERRY McCALL
JUSTICE

March 28, 2013

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.