MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2024 ME 78
Docket:        BCD-23-440
Argued:        September 10, 2024
Decided:       November 26, 2024
Revised:       December 26, 2024

Panel:         STANFILL, C.J., and MEAD, HORTON, LAWRENCE, and DOUGLAS, JJ.

CORE FINANCE TEAM AFFILIATES, LLC

v.

MAINE MEDICAL CENTER et al.

HORTON, J.

[¶1]  Three Maine hospitals[1] (the Hospitals) appeal from a judgment of the Business and Consumer Docket (*Duddy, J.*) awarding restitution for unjust enrichment to a healthcare consulting firm that provided services to the Hospitals.  The court held a bench trial on the unjust enrichment claim after a jury trial resulted in a verdict for the Hospitals on the firm's breach of contract claim.  The Hospitals contend that the judgment should be set aside for several reasons, including that the consulting firm was not entitled to assert an unjust enrichment claim in lieu of a quantum meruit claim for the reasonable value of

---

   [1]  The hospitals are Maine Medical Center, Southern Maine Health Care, and Franklin Memorial Hospital.

its services.  We agree that the court erred, vacate the judgment, and remand for judgment to be entered in favor of the Hospitals.

## I. BACKGROUND

### A.    Facts

[¶2]  The following factual summary is based on the evidence presented at the jury trial, viewed in the light most favorable to the jury's verdict. *See Kezer v. Cent. Me. Med. Ctr.*, 2012 ME 54, ¶ 2, 40 A.3d 955.

[¶3]  Core Finance Team Affiliates, LLC (Core) provides consulting and data services to hospitals.  One of Core's services is to provide hospitals with data that they need to support their claims for reimbursement by the federal government for services to Medicare-eligible patients.  The two types of data relevant to this case are "annual hourly wage" data for a range of health care occupations (such as registered nurse, nurse aide, and medical assistant) in a hospital's geographic service area, and "occupational mix survey" (OMS) data that is used to adjust the annual hourly wage data to reflect the hospital's mix of health care occupations in its provision of patient services.

[¶4]  In June 2014, the Maine Hospital Association, Inc. (the Association), an association of Maine hospitals, entered into a contract for Core to provide data services to the Hospitals.  Core's services involved making adjustments

3

and revisions to the Hospitals' internal data to be incorporated in the Hospitals' reimbursement submittals to the federal government.

[¶5] The contract called for Core to provide its services related to annual hourly wage data at stated fixed costs. Regarding OMS data, an attachment to the contract, titled Exhibit E, stated: "[The Association] will provide a listing of the providers who elect to participate in the Occupational Mix Survey review. [Core] will be responsible for confirming the provider(s') participation and directly bill the provider for those services." Unlike the fixed costs for Core's annual hourly wage services, the stated cost for Core's OMS services was contingent—a fee of 12.5% of the increase in federal Medicaid and Medicare reimbursement to the Hospitals attributable to the OMS services. The Hospital finance representatives with overall responsibility for the Core contract considered Core's proposed contingent fee for OMS data to be unacceptable for various reasons, and the Hospitals did not become contractually bound to pay Core the contingent fee for OMS services. However, the Hospitals nevertheless provided Core with the information that it needed to perform its OMS services, leading Core to believe that the Hospitals had in fact agreed to receive—and pay the contingent fee for—the OMS data. Core provided adjusted annual

hourly wage data and adjusted OMS data to the Hospitals, and the Hospitals used the data to obtain reimbursement for their services to Medicare patients.

[¶6] When Core demanded payment of the 12.5% contingent fee for OMS services called for in the contract, the Hospitals refused to pay.

## B.    Procedure

[¶7] On November 20, 2018, Core filed a complaint in the Superior Court (Cumberland County) against the Association and the Hospitals, alleging that Core was entitled to compensation for the OMS services.  In its complaint, Core pleaded two theories of liability, "Breach of Contract" (Count 1) and "Unjust Enrichment" (Count 2), and attached a copy of the June 2014 contract between the Association and Core.   The Hospitals answered and denied Core's allegations on December 21, 2018.  On the same day, the matter was transferred to the Business and Consumer Docket.

[¶8]  On January 4, 2019, the Association answered, denying Core's allegations, and moved to compel arbitration under the provisions of the contract between the Association and Core.  The Hospitals took no position on the Association's motion but denied contracting with Core for OMS services.  On March 6, 2019, the Business and Consumer Court (*Duddy, J.*) entered an order

5

compelling arbitration only between the Association and Core.[2]  The Hospitals filed a demand for a jury trial on all issues triable to a jury.  *See* M.R. Civ. P. 38(b).  On June 28, 2021, the court denied the parties' cross-motions for summary judgment on the issue of whether the Hospitals were liable to Core for OMS services under the contract between Core and the Association.

[¶9]  On April 10, 2023, Core filed a motion in limine seeking to exclude from the jury trial any reference to the unjust enrichment claim.  It argued: "If the jury concludes there was a contract in this case, then the unjust enrichment claim is moot.  However, if the jury finds there was no contract, then the unjust enrichment claim is ripe [for] consideration by the Court."  The Hospitals opposed the motion, arguing that "Core's claim styled as 'unjust enrichment' should be tried to the jury" because Core "actually pled a quantum meruit claim" triable to a jury.  The Hospitals alternatively argued that if the court were to find that a jury trial right did not attach to Core's unjust enrichment claim, the court should nonetheless use the jury in an advisory capacity to decide issues of fact relevant to the claim.  *See* M.R. Civ. P. 39(d).

[¶10]  On April 26, 2023, the court ordered that any reference to the unjust enrichment claim be excluded from the trial.  It explained:

---

[2] The claim between Core and the Association is not at issue in this appeal.

> As noted by [the Hospitals], the language used in [Core's] Count II Unjust Enrichment claim is susceptible to interpretation as a claim for quantum meruit. However, [Core] assures us all that it has pled a claim for unjust enrichment, and the Court will respect [Core's] interpretation of its own Complaint. However, the only relief available to [Core] on Count II, if any, will be relief appropriate to the equitable claim of unjust enrichment, not damages as would be appropriate to quantum meruit.

The court ultimately decided that the claim for unjust enrichment would be decided by the court at a bench trial. At the pre-trial conference, the Hospitals raised the issue again, contending that Core had pleaded a quantum meruit claim, not an unjust enrichment claim, and that the Hospitals were entitled to a jury trial on that claim. The court again responded that, despite some ambiguity in the complaint, it would not override Core's interpretation of its pleading as asserting a claim for unjust enrichment.

### 1. Jury Trial on Breach of Contract

[¶11] The court held a four-day jury trial on the breach of contract claim on June 5, 6, 7, and 8, 2023. It heard testimony from current and former employees of the Hospitals, as well as a principal of Core, Robert (Brad) Bowman, and the vice president of finance of the Association, David Winslow. On the first day of trial, the Hospitals—again emphasizing their right to a jury trial on Core's ostensible unjust enrichment claim—moved the court to

convene an advisory jury on that claim; Core objected, and the court denied the motion. *See* M.R. Civ. P. 39(d).

[¶12] At the end of the trial, the court clarified during its jury instructions that it "determined that the engagement letter . . . along with all its attachments constitutes a contract and that David Winslow of the Maine Hospital Association was authorized as the agent of the hospitals to sign the engagement letter." The court concluded that the terms of the OMS services portion of the contract were ambiguous as a matter of law and stated to the jury: "[Y]ou must decide whether and how under the terms of the contract a hospital becomes bound to participate in the OMS services component of the contract. You must then determine, based on the facts as you find them, whether Core has proven by a preponderance of the evidence that each of the hospitals became bound to participate in the OMS services component of the contract." The court also explained that Exhibit E was ambiguous with respect to Winslow's authority to bind the Hospitals and provided the jury with instructions on authority (implied and apparent) and condition precedent. The court stated to the jury,

> Now, in this case, Core asserts that the hospitals breached the contract by failing to pay Core the required contingent fee in exchange for the OMS services. There is no dispute that the hospitals did not pay Core a contingent fee for performing the OMS services. If you find that the contract bound the hospitals to participate in the OMS services in exchange for a contingent fee,

then you must find that the hospitals breached a contract and consider the [damages]. However, if you determine that the contract did not bind the hospitals to participate in the OMS services, then you must return a verdict for the hospitals and not consider damages.

[¶13] The jury verdict form consisted of two questions to be answered as to each of the three hospitals. The first read: "Has Core proved to you by a preponderance of the evidence that [the hospital] was contractually obligated to participate in the OMS services component of the contract?" The jury's answer was "No" as to each hospital. The jury therefore did not answer the second question, which asked the jury to state the dollar amount of the fee that Core was entitled to be paid by each hospital.

## 2. Bench Trial on Unjust Enrichment

[¶14] On August 24, 2023, the court held a bench trial on the unjust enrichment claim. On October 23, 2023, the court entered a judgment in favor of Core, concluding that Core established the elements of its unjust enrichment claim by a preponderance of the evidence. In the judgment, the court commented on the parties' dispute about whether Core's unjust enrichment claim should have been "pleaded" in quantum meruit. The court noted that Core had insisted throughout the proceedings that it did not intend to pursue a claim for quantum meruit. The court held that because the Hospitals did not

plead quantum meruit as an affirmative defense, the issue of whether quantum meruit was the appropriate theory of recovery was waived.

[¶15] On Core's unjust enrichment claim, the court awarded Core a total of $566,582.25, allocated among the Hospitals, based on the amount by which each hospital's reimbursement for Medicaid and Medicare patient services had increased as a result of the OMS data that Core had provided. In calculating the award, the court initially found that the Hospitals received $3,777,215 more in federal reimbursement during federal fiscal years 2016, 2017, and 2018 than they would have without Core's OMS services. Based on testimony given at the bench trial about typical fees for OMS services, the court multiplied the increase by 15%, rather than the 12.5% contingent fee that the proposed contract contemplated for OMS services.

[¶16] The Hospitals filed a timely appeal. *See* M.R. App. P. 2B(c)(1); 14 M.R.S. § 1851 (2024).

## II. DISCUSSION

[¶17] We review de novo the court's legal analysis and its application of law to facts. *Atl. Home Sols., Inc. v. Pham*, 2022 ME 6, ¶ 8, 267 A.3d 1106.

[¶18] The parties frame the central issue as whether the court should have considered Core's unjust enrichment claim in the absence of a claim for

quantum meruit. The Hospitals argue that the trial court lacked the authority to hear the equitable unjust enrichment claim because Core did not exhaust its legal remedies by pursuing a quantum meruit claim. Core contends that unjust enrichment was the appropriate remedy given the jury verdict on its express contract claim and that the Hospitals have waived objection to the unjust enrichment claim by failing to plead quantum meruit as an affirmative defense.

## A. Quantum Meruit and Unjust Enrichment Compared and Contrasted

[¶19] "*Quantum meruit*, also sometimes labelled a contract 'implied in fact,' involves recovery for services or materials provided under an implied contract." *Paffhausen v. Balano*, 1998 ME 47, ¶ 6, 708 A.2d 269; *see Runnells v. Quinn*, 2006 ME 7, ¶ 10, 890 A.2d 713. "A contract 'implied in fact' is a true contract that arises from the tacit agreement of the parties," 1 Timothy Murray, *Corbin on Contracts* § 1.20 at 85 (2018), and is "inferred from the conduct of the parties." *Runnells*, 2006 ME 7, ¶ 10, 890 A.2d 713. "To sustain a claim in quantum meruit, a plaintiff must establish that (1) services were rendered to the defendant by the plaintiff; (2) with the knowledge and consent of the defendant; and (3) under circumstances that make it reasonable for the plaintiff to expect payment." *Forrest Assocs. v. Passamaquoddy Tribe*, 2000 ME 195, ¶ 11, 760 A.2d 1041 (quotation marks omitted). A claim for quantum

11

meruit can co-exist with an express contract when the express contract does not encompass the services that are the basis of the quantum meruit claim. *See Runnells*, 2006 ME 7, ¶¶ 8-11, 890 A.2d 713.

[¶20] "Unjust enrichment describes recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay." *Paffhausen*, 1998 ME 47, ¶ 6, 708 A.2d 269.

[¶21] "[T]he distinction between 'unjust enrichment' and 'quantum meruit' is legally significant. *Quantum meruit* involves recovery for services or materials provided under an implied contract. . . . In an unjust enrichment case, the court must decide what constitutes the inequitable retention of a benefit by the defendant. The damages analysis is based on principles of equity, not contract." *Aladdin Elec. Assocs. v. Town of Old Orchard Beach*, 645 A.2d 1142, 1145 (Me. 1994). Because quantum meruit sounds in contract and unjust enrichment is rooted in equity, we have classified quantum meruit as a legal remedy and unjust enrichment as an equitable remedy. *Cummings v. Bean*, 2004 ME 93, ¶ 9, 853 A.2d 221.[3]

---

[3] The Restatement differs from our precedent in not necessarily classifying unjust enrichment as an equitable remedy. It posits that whether a remedy is legal or equitable depends mainly on the nature of relief sought: "If restitution to the claimant is accomplished exclusively by a judgment for

[¶22]   The Restatement presents a useful comparison of quantum meruit and unjust enrichment:

> In modern practice, a claim styled "quantum meruit" typically seeks compensation for services rendered in the expectation of payment, but in the absence of explicit agreement as to amount.  Based on the circumstances of the transaction, it may be appropriate to find an implied promise by the defendant to compensate the plaintiff—usually at the customary wage or "going rate" for the work done.  If so, the measure of the plaintiff's contractual expectation is described by the words "quantum meruit" (or "as much as he is entitled to"), but the defendant's obligation is fully explained as a matter of contract.  In such a case it would be erroneous to associate "quantum meruit" with a liability in unjust enrichment, or to view the plaintiff's action as one for restitution rather than contract damages.  Changing the facts only slightly yields a case in which it may be much harder to conclude that the defendant promised to pay a reasonable price for services received, although the law imposes the same obligation in the absence of agreement.

Restatement (Third) of Restitution and Unjust Enrichment § 31 cmt. e (Am. L. Inst. 2011) (citations omitted).

[¶23]   The comparison yields two salient conclusions.  First, a claim designated as quantum meruit sounds in contract if the plaintiff can establish that the defendant made an implied but enforceable promise to pay for the

---

money, without resort to any of the ancillary remedial devices traditionally available in equity but not at law, the remedy is presumptively legal. . . . [E]quitable remedies may be distinguished from legal ones because they order the defendant to do something."  Restatement (Third) of Restitution and Unjust Enrichment § 4 cmt. d (Am. L. Inst. 2011).  Because the Restatement deems unjust enrichment a legal remedy if the relief sought is a judgment for damages, it states that a plaintiff pursuing an unjust enrichment claim "need not demonstrate the inadequacy of available remedies at law."  *Id.* § 4(2).

13

plaintiff's services, but can sound in unjust enrichment if there was no such promise, express or implied. Second, while "there may be a relationship between" the value of the plaintiff's work for purposes of quantum meruit and the value of the benefit conferred for purposes of unjust enrichment, "they are not necessarily the same." *Bowden v. Grindle*, 651 A.2d 347, 351 (Me. 1994).

[¶24] Applied here, these principles confirm that the jury verdict on Core's claim for breach of express contract did not end the case. Because Core benefited the Hospitals by providing them with OMS data that they used in seeking federal reimbursement, there remained the question whether Core was entitled to recover under another theory of liability (*i.e.*, quantum meruit or unjust enrichment). There is no doubt that Core could have presented its claim in quantum meruit. Core's principal testified that Core expected to be paid, and two of the Hospitals' witnesses acknowledged that it would be fair for Core to receive payment of some kind, although not the contingent fee mentioned in Exhibit E to the proposed contract. Even if the Hospitals did not expressly request Core's OMS services, they plainly consented to and benefited from the services. The court's findings that the Hospitals "were aware Core was providing OMS services, supplied Core with all the necessary data and documentation, answered Core's questions, accepted the adjustments

identified by Core, submitted the adjustments to the Medicare contractor, and enjoyed substantially increased Medicare payments as a direct result of Core's work" apply as squarely to quantum meruit as they do to unjust enrichment. In sum, had Core designated its claim as being for quantum meruit, there was ample evidence to support the claim being tried to a jury.

## B.     The Primacy of Contract Over Unjust Enrichment

[¶25]  Distilled to its essence, the Hospitals' argument is that, because quantum meruit is a legal remedy and unjust enrichment is an equitable remedy, because Core's quantum meruit remedy was adequate, and because equitable remedies are available only in the absence of an adequate legal remedy, Core could not recover on an unjust enrichment theory without first attempting to recover in quantum meruit.

[¶26]  Core's response is that because there was an express contract, quantum meruit was not an available remedy.  Core also contends that, as the trial court ruled, the Hospitals waived their argument by failing to plead quantum meruit as an affirmative defense.

[¶27] We disagree with Core on both points. Quantum meruit is a theory of liability and a method of measuring damages, not an affirmative defense. *See, e.g., InfoBridge, LLC v. Chimani, Inc.*, 2020 ME 41, ¶ 3, 228 A.3d 721

(considering a complaint "alleging breach of contract, quantum meruit, and unjust enrichment claims"); *Daniel G. Lilley L. Off., P.A. v. Flynn*, 2015 ME 134, ¶ 8, 129 A.3d 936 (same); *Stephan Joseph Co.* v. *Bowdoin Coll.*, No. CV-03-338, 2003 WL 22250338, at *2 (Me. Super. Ct. Sept. 23, 2003) (permitting the plaintiff to amend a complaint to plead quantum meruit).[4]  The existence of an express contract does not preclude a quantum meruit claim if the express contract does not cover the services that are the subject of the quantum meruit claim, *see Runnells*, 2006 ME 7, ¶¶ 8-11, 890 A.2d 713, which was precisely the case here.

[¶28]  The Hospitals' contentions call for a more nuanced consideration. In comparing quantum meruit and unjust enrichment claims, *Paffhausen*, 1998 ME 47, ¶¶ 7-9, 708 A.2d 269; *Aladdin Elec.,* 645 A.2d at 1145, we have never stated that an unjust enrichment claim involving the rendition of services cannot be adjudicated until after the court has rejected a quantum meruit claim involving the same services.  However, that premise can be readily inferred from the combination of our limitation on the availability of equitable remedies

---

[4]  Core's authority for its assertion that quantum meruit is an affirmative defense is an intermediate appeals court decision from Texas.  *See Protocol Techs., Inc. v. J.B. Grand Canyon Dairy, L.P.*, 406 S.W.3d 609, 614 (Tex. App. 2013).  *Protocol Technologies* holds, however, that a defendant may invoke an *express contract* as an affirmative defense to a quantum meruit claim, which is deemed equitable under Texas law.  *Id.* at 614 ("The existence of an express contract is an affirmative defense to an equitable claim of quantum meruit or unjust enrichment.").

if there is an adequate legal remedy, *see Keniston v. JPMorgan Chase Bank*, 2007 ME 29, ¶ 9 n.6, 918 A.2d 436; *Wahlcometroflex, Inc. v. Baldwin*, 2010 ME 26, ¶ 22, 991 A.2d 44; *McIntyre v. Plummer Assocs.*, 375 A.2d 1083, 1084 (Me. 1977), and our characterization of quantum meruit as a legal remedy and unjust enrichment as an equitable remedy, *see Dinan v. Alpha Networks Inc.*, 2013 ME 22, ¶ 20, 60 A.3d 792 ("Quantum meruit is a legal, not an equitable, remedy and thus is distinct from the theory of unjust enrichment." (citing *Cummings*, 2004 ME 93, ¶ 9, 853 A.2d 221)). Our cases express the "axiomatic" principle that an equitable remedy will be granted only where there is not an adequate legal remedy. *McIntyre*, 375 A.2d at 1084. So too, a party will not be awarded an equitable form of relief when the party fails to timely pursue a legal remedy available to it. *Id.* ("[The] appellee had an adequate legal remedy available to her, namely, redemption, and . . . having failed to pursue that remedy she is not entitled to the equitable relief of specific performance."). Limiting a litigant's access to courts of equity serves to encourage the diligent pursuit of legal remedies. *See Kane v. Morrison*, 44 A.2d 53, 54 (Pa. 1945); *In re Wife, K.*, 297 A.2d 424, 425-26 (Del. Ch. 1972).

[¶29] A different substantive reason why a court should usually address quantum meruit before considering unjust enrichment is the primacy of

contract over unjust enrichment in the remedial scheme. The Third Restatement of Restitution explains:

> Considerations of both justice and efficiency require that private transfers be made pursuant to contract whenever reasonably possible, and that the parties' own definition of their respective obligations—assuming the validity of their agreement by all pertinent tests—take precedence over the obligations that the law would impose in the absence of agreement. *Restitution is accordingly subordinate to contract as an organizing principle of private relationships, and the terms of an enforceable agreement normally displace any claim of unjust enrichment within their reach.*

Restatement (Third) of Restitution and Unjust Enrichment § 2 cmt. c (emphasis added).

[¶30] Similarly, our precedent calls for us to determine whether the parties entered into an enforceable express contract before considering claims for quantum meruit or unjust enrichment. *Aroostook Valley R.R. Co. v. Bangor & Aroostook R.R. Co.*, 455 A.2d 431, 433 (Me. 1983) ("When two parties have agreed upon specific and unambiguous terms of compensation for specified services by means of an express contract, as in the present case, the law should be most hesitant to imply a second contract, which covers the same subject matter, if the evidence does not compel an inference that the parties intended to make one.").

[¶31] Because quantum meruit is based on a "true contract," albeit one that is implied from the parties' conduct, the same principle means that the court need not consider unjust enrichment if quantum meruit is an adequate remedy under the facts that the plaintiff alleges. If the quantum meruit remedy is not adequate, there are circumstances, discussed below, in which the plaintiff can pursue unjust enrichment. *See infra* ¶ 35. Here, however, Core has not suggested, either in the trial court or on appeal, that quantum meruit would not have been an adequate remedy.

[¶32] We recognize that Core's repeated insistence that its claim was for unjust enrichment, not for quantum meruit, put the court in a difficult position. Core was not entitled to deprive the Hospitals of the right to a jury trial by designating as an equitable claim what was in substance a legal claim. On the other hand, Core was entitled to decide what claims it had pleaded. *See Connectu LLC v. Zuckerberg*, 522 F.3d 82, 93 (1st Cir. 2008). Moreover, the characterization of the claim ultimately may make little difference when quantum meruit and unjust enrichment yield the "same recovery." Restatement (Third) of Restitution and Unjust Enrichment § 31 cmt. e ("When recovery is based on unjust enrichment, the presumptive value to the defendant of services the defendant has requested is likewise a reasonable

price, usually the lesser of (i) market value and (ii) a price the defendant has expressed a willingness to pay." (emphasis omitted)); *see Bowden,* 651 A.2d at 351. We need not explore the dilemma further because, even accepting Core's claim as a valid unjust enrichment claim, the judgment cannot stand.

## C. The Limits on Recovery for Unjust Enrichment

[¶33] Viewed as restitution for unjust enrichment, the court's award totaling $566,582.25 is excessive for two reasons.

[¶34] The first is that, when a plaintiff asserts an unjust enrichment claim for services rendered in reliance on an unenforceable express contract, the amount that the plaintiff would have been entitled to receive under the contract sets the ceiling on recovery for unjust enrichment. *See Aladdin Elec.*, 645 A.2d at 1145-46 ("The equitable concept of unjust enrichment would not justify an award to plaintiff in excess of what it was contractually entitled to . . . ." (emphasis omitted)). The court awarded Core 15% of the amount of increase in federal Medicaid and Medicare reimbursement attributable to the OMS services. The proposed contract called for Core to receive a fee of only 12.5%.

[¶35] The second reason is that the award was based on the benefit the Hospitals obtained from the federal government as a result of Core's OMS services. In other words, the award required the Hospitals to disgorge a portion

of what might be called the "profit" that they realized as a result of Core's OMS services.  In limited circumstances, a plaintiff who has a quantum meruit claim or even a breach of contract claim can assert that those legal remedies are inadequate and pursue an unjust enrichment claim for the profit realized by the defendant, but only upon proof that the defendant engaged in some form of active wrongdoing.  *See* Restatement (Third) of Restitution and Unjust Enrichment § 51 cmt. a ("This profit-based measure of unjust enrichment determines recoveries against conscious wrongdoers and defaulting fiduciaries."); *Liu v. Sec. & Exch. Comm'n*, 591 U.S. 71, 79–80 (2020); *see also Oceanic Inn, Inc. v. Sloan's Cove, LLC*, 2016 ME 34, ¶ 38, 133 A.3d 1021 (describing accounting as "a restitutionary remedy based upon avoiding unjust enrichment . . . [that] reaches monies owed by a fiduciary or other wrongdoer, including profits produced by property which in equity and good conscience belonged to the plaintiff" (quoting *Accounting for Profits,* Black's Law Dictionary (9th ed. 2009))).  But neither the jury nor the court made any finding of conscious wrongdoing by the Hospitals.  In the absence of proof of any wrongful conduct on the part of the Hospitals, the appropriate measure of damages for Core's unjust enrichment claim is the same as it would have been had Core designated its claim as being for quantum meruit—"the market value of [its]

uncompensated contractual performance" independent of the additional benefit the Hospitals received from a third party. *See* Restatement (Third) of Restitution and Unjust Enrichment § 38(2)(b); *id.* § 31 cmt. e ("When recovery is based on unjust enrichment, the presumptive value to the defendant of services the defendant has requested is likewise a reasonable price . . . ." (emphasis omitted)). However, at both trials, Core's evidence of the value of its services was based on percentage multipliers of the increase in federal reimbursement received by the Hospitals as a result of Core's OMS services. The only evidence of the value of Core's OMS services independent of federal reimbursement was presented by the Hospitals, but the court rejected the evidence as not credible. Even if we were to remand the case for the trial court to make an award based on the value of the benefit conferred by Core upon the Hospitals, the record lacks a basis for the court to make the determination without imposing a disgorgement not supported in the evidence. In other words, Core failed to prove the damages recoverable under either a quantum meruit theory or an unjust enrichment theory.

The entry is:

> Judgment vacated. Remanded to the Business and Consumer Docket for entry of judgment in favor of the Hospitals.

Gerald F. Petruccelli, Esq. (orally), Scott D. Dolan, Esq., and Michael A. Poulin, Esq., Petruccelli, Martin & Haddow, LLP, Portland, for appellants Maine Medical Center, Southern Maine Health Care, and Franklin Memorial Hospital

Lee H. Bals, Esq. (orally), and K. Blair Johnson, Esq., Marcus Clegg, Portland, for appellee Core Finance Team Affiliates, LLC

Business and Consumer Docket docket number CV-2019-02
FOR CLERK REFERENCE ONLY